## LEVI B. WYMAN *versus* HARLOW KILGORE.

In real actions, an amendment embracing a different piece of land from that described in the declaration, is inadmissible, as setting forth a new cause of action.

Otherwise, if the amendment merely gives a more particular and certain description of the land originally sued for.

ON REPORT of the evidence by TENNEY, C. J.

WRIT OF ENTRY to recover possession of a lot of land in Norridgewock.

The demandant claimed under a deed from John Lowell to Levi Wyman, dated April 6, 1819, the demandant being said Wyman's son and sole heir. The deed conveyed the " easterly part of great lot E 1."

The tenant claimed under a grant from the Proprietors of Kennebec Purchase to Samuel Goodwin, dated Dec. 12, 1770, conveying lot marked E 2, and intervening deeds.

The question at issue was the true south line of E 2. The testimony was voluminous and conflicting. The demandant claimed the "Ballard line" as the true one, and the tenant claimed the " Perham line."

David Garland was appointed by the Court as surveyor, and described the land as he surveyed it.

At the December term, 1857, after a large part of the testimony had been taken, the demandant had leave to amend on certain terms, and the case was continued, the defendant filing exceptions to the leave granted and to the amendment.

At the March term, 1858, the case was tried on the amend-

ed count; and the parties, after the testimony had been elicited, agreed to submit the case to the full Court on so much of the evidence as was legally admissible, the Court to draw such inferences as a jury might lawfully draw. The case turned upon questions of fact, rather than of law.

The case was argued at length by

*J. S. Abbott,* for the demandant, and

*J. H. Webster,* for the tenant.

The opinion of the Court was drawn up by

MAY, J.—Upon a careful examination of the evidence in this case, we are satisfied that if the demandant can recover, it must be by force of the deed from John Lowell to his ancestor, Levi Wyman, dated April 6, 1819. The evidence wholly fails to establish any title by disseizin in the demandant to any land described in his writ. The amendment, therefore, which was allowed, if it embraces any other land than was originally described in the writ, becomes unimportant, because, in our judgment, the demandant cannot recover for any such land; and if the object of it was only to make a different and more certain description of the land originally declared for, then it is unobjectionable. As the writ originally stood, its description of the premises was in perfect harmony with the description in the deed above referred to, unless there has been some change in the location of the south line of Norridgewock since the making of that deed, and before the commencement of this suit, of which there is some evidence in the case.

The description of the land, as contained in the deed, is of a tract "in Norridgewock, beginning where the south line of lot marked E 2 crosses the south line of Norridgewock, thence north $67\frac{1}{2}°$ west by the S. Goodwin line, so called, 51 rods, to a stake and stones, thence south $22\frac{1}{2}°$ west about 25 rods to the town line; thence east by the town line to the first mentioned bound, containing four acres; being the easterly part of great lot E 1."

The whole controversy between the parties arises from the uncertainty upon the face of the earth of the place of beginning. This must be determined by the monuments referred to in the deed; and the lines therein mentioned, as they existed at the date of the deed, are to be taken as monuments for that purpose. *Flagg* v. *Thurston*, 13 Pick., 145; *Cook* v. *Babcock*, 7 Cush., 526. The place of beginning being fixed, the other boundaries become certain, or are easily made so. The uncertainty, now existing, grows out of the difficulty of ascertaining the exact location of the south line of the lot marked E 2, and where the south line of Norridgewock then was, as they in fact then existed upon the face of the earth. If these can be made certain, the place of their intersection or crossing, referred to in the deed as the place of beginning, will at once appear. When the starting point is fixed, the residue of the description in the deed becomes plain, so that the location of the demandant's land upon the face of the earth can be determined with absolute certainty. If the other monuments cannot now be found, then the courses and distances, mentioned in the deed, may be resorted to, to determine where they originally were.

The burden is upon the demandant to show what land is embraced within the deed upon which his title depends. It is contended by the counsel for the demandant, that the south line of lot E 2 is identical with the line which is known as the Ballard line; while, on the other side, it is contended, with equal confidence, that such is not the fact, but that said south line of lot E 2 is the same as the Perham line. That the Ballard line and Perham line are nearly parallel with each other, and some considerable distance apart, seems to be conceded by both sides. We think the evidence in the case does not satisfactorily show any such change in the location of the town line since the making of the deed from Lowell to Levi Wyman, as essentially to affect the place of its being crossed by the south line of E 2. If it turns out that the Perham line is the north line of the demandant's land, then the fact, if such be the fact, that the Ballard line

may be some 20 rods or more to the north of it, and that the owners of lots 5 and 6 are bounded on the south by the Ballard line, thus leaving a strip of land on lot E 2, outside of Ballard's survey, can have no effect to carry the north line of the demandant any further north. His land must be located by the boundaries in the deed from which his title is derived.

The question then returns, where, upon the face of the earth, is the true south line of lot E 2, and where did it cross the town line ? It does not appear from any evidence in the case that Samuel Goodwin ever made any survey of the lots in question; but it is probable that the line in the deed to Levi Wyman, described as running from the place of beginning "67½ degrees west on the S. Goodwin line," was the south line of lot E 2, as it appears from some of the deeds in the case to and from him, that he was, prior to 1800, if not after, the owner of that lot, or of some part of it bounded on the south line. We have no doubt but that his south line and the south line of E 2, were identical.

The monuments, fences, and other indications, as testified to by the surveyor Garland, as being in, upon and near along the line which he ran at the request of the tenant as the south line of E 2, tend very strongly to establish the fact that that line was the true south line of that lot. It is difficult to reconcile so many coincidences with any other view. The fact that so many other persons claiming lands along that line, and bounded by their deeds upon it, have for so many years acknowledged and treated the line claimed by the tenant as the true line of E 2, is also deserving of great weight. We think it is fairly deducible, from the testimony on both sides, that this line is what is called the Perham line, and that, at the place where the demandant's land lies, it is some 20 rods or more south of the Ballard line. It probably took its name from the fact, that one Perham assisted Hayden and Downing in ascertaining the location of these lot lines in 1813.

It appears, from the testimony of William Allen, that the

Ballard line was of an older date, he having traced it soon after his removal to Norridgewock in 1810. It also appears, from the records of the Proprietors of the Kennebec Purchase, that, in their grant of lot E 2 to Samuel Goodwin in 1770, said lot is said to be delineated on a plan made by John McKechnie as surveyor, dated November 7th, 1769. The only evidence of any survey of this lot by Ballard, as a whole, arises from the fact that he run it out into 100 acre lots; but the south ends of the lots, as run out by him, do not extend so far south as the Perham line. Whether he ran the south line of these lots in accordance with McKechnie's running in 1769, does not clearly appear. As there is some evidence in the case, that ancient monuments with McKechnie's marks upon them, have been seen and known by the early settlers upon the line called the Perham line, the inference is, that he did not, and that Perham and his party did. Garland says that Hayden and Downing's survey corresponds with McKechnie's, and we have already seen that it is probable that their survey took the name of Perham from the fact that he assisted them. There is no testimony tending to any other result. We are brought, therefore, to the conclusion that the true south line of lot E 2 is the same as the Perham line. Following this line, it is found to cross the town line of Norridgewock some 20 or 25 rods south of the Ballard line. The plaintiff, therefore, can recover no land lying north of the Perham line.

It is true, there are some things appearing in the evidence, and referred to by the able counsel for the demandant, which appear to be inconsistent with the view we have taken of this case; but not sufficient, in the judgment of the Court, to control the facts and circumstances to which allusion has been made, as the basis of the conclusion to which we have arrived.

The result is, that the demandant cannot recover.

*Demandant nonsuit.*

TENNEY, C. J., and RICE, APPLETON, CUTTING and GOODENOW, JJ., concurred.