| 8 | 131 |
| 14 | 553 |

| 8 | 131 |
| 15 | 581 |
| 15 | 590 |

| 8 | 131 |
| 17 | 380 |

| 8 | 131 |
| 2a | 192 |

Platte and Denver Ditch Company v. Anderson.

1. In a private action for a public nuisance, special damages must be averred and proved, and the omission of such averment is not cured by verdict.

2. Where a ditch exists by lawful authority, its proprietors are not liable for damages resulting from such existence of the ditch *ipso facto* merely.

3. Where one buys a city lot bordering upon ground set apart or dedicated to any public use, he takes it subject to all the annoyances incident to the purposes of the dedication.

4. When a consequence, which would otherwise constitute even a nuisance, is a necessary and probable result of an act done in pursuance of legislative authority, the grant of such authority, if not obnoxious to constitutional objections, operates as a protection, but if done unnecessarily or in a negligent or-improper manner, it cannot then be said to have been contemplated by the grant, and therefore not authorized thereby.

5. While such an authorized act exercised within the fair scope of the grant cannot be a public nuisance, it *may* be a private one, and the grant affords no protection to an action for resultant damages; and for consequential injuries resulting from an excess of power, or from an exercise of powers in an improper, careless or negligent manner, a remedy may be had.

*Appeal from the Superior Court of Denver.*

THE facts are stated in the opinion.

Mr. VINCENT D. MARKHAM, for appellant.

Messrs. BROWNE and PUTNAM, for appellee.

STONE, J.    This was a suit by the appellee, Anderson, against the company and its lessees for damages to his premises caused by the maintenance and operation of the ditch, and to have the said ditch abated as a public nuisance.    There was a jury verdict of $500 damages for appellee, upon which judgment was rendered accordingly, and as our decision rests partly upon the failure of the evidence to make out a case under the averments of the complaint, a statement of the substance of the complaint and evidence is permitted to a clear understanding of the case.

Appellee, as plaintiff below, averred:

1st. That he is the owner in fee-simple of a certain

half lot of ground, and that he purchased the same August 18, 1877.

2d. That he paid $1,150 therefor with the house thereon; that he further improved the premises to the value of $250, and that but for the injuries hereinafter maintained, the property would be worth the sum of $4,000.

3d. That the premises abut on Eighth street, a public street of the city of Denver.

4th. That all of said street has at all times been necessary to the convenient use and enjoyment of said premises, and for ingress and egress to and from the same by him and his grantors.

5th. That ever since his purchase he has occupied the brick house thereon for a dwelling with his family, and that all the said premises can only be fully enjoyed by the free and uninterrupted use of said street.

6th. That at all times it has been the duty of the city to keep in repair and free from obstructions the streets, alleys, etc., including said Eighth street, for travel and for easy access to and from the premises of abutting lot owners.

7th. That on the 8th of October, 1864, the defendant company was incorporated under the laws of the territory of Colorado, for milling, manufacturing, etc., purposes, and during that year, without any authority from the city or property owners, constructed a ditch along said Eighth street in front of the premises now owned by the plaintiff, and thence hitherto have unlawfully maintained said ditch, thereby obstructing ingress and egress to and from plaintiff's said premises. That since plaintiff's purchase, the defendants have largely increased the size and capacity of said ditch, and the depth and width of water therein, and thereby encroached upon the sidewalk in front of said premises, and that said enlargement was made unlawfully.

8th. That the water in said ditch is now of the width

of twelve feet, and of the depth of five feet, "exposing to danger persons, and especially children, residing in the vicinity," wholly interrupting travel, except on the opposite side of the street, "and also endangering plaintiff's premises from overflow."

9th. That defendants are managing and controlling the said ditch for their use in operating large flouring mills; that they have enlarged the ditch over and upon the sidewalk fronting plaintiff's premises, and are continually increasing the width through said street; that the rapid flow of water is washing the banks away; that the premises of plaintiff are encroached upon, and the soil endangered; that such acts are continuing, and will continue so long as the ditch remains in the street.

10th. That said street is one of the public streets of Denver, a city of fifty thousand inhabitants, and that "a large uncovered ditch in one of the streets of said city is a public nuisance," endangering the health and lives of the public, and interrupting the street as a highway.

11th. That defendants have never had license or grant from the plaintiff, or his grantors, or from the city, or from the legislature of the territory or state, to construct, enlarge or maintain the ditch through and along the street in front of said premises; that plaintiff is the owner in fee of the street in front of the premises to the middle thereof, subject to the use of the public as a highway, and that he is entitled to the unobstructed use of all of said street in common with the public.

12th. That great and irreparable injury will, of necessity, daily accrue to plaintiff's premises by the continuance of said ditch along said street, and that there is no adequate remedy at law. Wherefore, plaintiff demands judgment against the defendants. *First*, for a preliminary injunction pending this action, restraining the continuance of the ditch in this street. *Second*, that on final hearing the ditch be abated as a nuisance, and the

street restored to its condition as before the ditch was constructed; and *Third*, for $2,000 damages and costs.

The answer of defendants put in issue all the material averments of the complaint, and it was stipulated between the parties that the plaintiff is the owner of the premises as alleged, and that' he purchased the same August 18, 1877; that defendant ditch company incorporated October 8, 1864; that it constructed the ditch in that and the next year, and that the defendants, and their grantors and lessors, have used the same ever since.

The relief prayed by the plaintiff, as will be seen, is partly legal and partly equitable in its nature. But since the court below made no decree respecting the equitable relief prayed, the injunction against, and abatement of, the ditch, nor was there, so far as the record shows, any finding or verdict relating to the alleged character of the ditch as a public nuisance, we need only consider such matters as affect the judgment for damages in favor of the plaintiff.

In a private action for a public nuisance, special damages must be averred and proved. *Smith v. McConothy*, 11 Mo. 517. The plaintiff, in such case, has the same right, and no more, as in case of a private nuisance. The rule is well settled that for any obstruction to streets, not resulting in special injury to the individual, the public can only complain; and, in a suit by such individual, the special injury to him is the gist of the action. *McDonald v. English*, 85 Ill. 232. Where the action is for injuries sustained by a public nuisance, there must be a specific averment of the special damage, and the defect of such omitted averment is not cured by verdict; for since the special injury is the gist of the action, unless alleged and proved, no cause of action exists. Wood's law of Nuisance, sec. 829, and authorities cited.

Tested by this rule as to the requisites of a complaint in such cases, the complaint in this case furnishes very little foundation for the judgment, even if its averments

had all been proved. A careful examination of said complaint fails to disclose any averment of injury or damage peculiar to the plaintiff, except the rather indefinite allegations in the eighth and ninth counts, respecting the water in the ditch, "also endangering the safety of plaintiff's home and premises from overflow therefrom;" that the defendants have, during the last two years, enlarged the ditch and extended the bank over and upon the sidewalk in front of plaintiff's premises, and that "from the rapid flow of the large body of water passing through said ditch, the banks thereof are continually being washed away, and the said property of the plaintiff encroached on, and the structures thereon erected and the soil thereof endangered."

Even these allegations failed of proof upon the hearing. It was conclusively shown by the testimony that neither the depth nor width of the ditch at this point had been enlarged since the plaintiff had owned said premises, that no overflow upon said premises had occurred, and that the sidewalk had not been interfered with by washing, as in the complaint averred, and was quite the full width of twelve feet, and but slightly obstructed on the outer edge by dirt thrown upon the bank when the ditch was annually cleaned.

The substance of all the testimony heard in the case, as presented by the record, is as follows:

Testimony of plaintiff: The ditch is about twelve feet from the line of my premises; it is four feet wider now than when I purchased, and the water is eighteen inches deeper. My property has decreased in value more than half, on account of the maintaining of the ditch there; the property would be worth $4,000 if there was no ditch operated in front since my purchase; worth very little now — say $2,000. The ditch obstructs thirty feet of the street; I have put a foot-bridge across. Two of my children fell into the ditch; were pulled out; not hurt; several others in the neighborhood fell in; one was drowned.

The sidewalk is higher than the lot; I filled up the sidewalk in front to prevent flooding the premises; the sidewalk is twelve feet wide; not over six or seven feet clear now, on account of dirt thrown on it from clearing out the ditch.    The ditch overflows there, but not upon my premises.    Cross-examination: It was about thirteen feet from my front line to high water mark on the ditch bank; the bank is a foot higher next the ditch than the sidewalk. The water is three and a half feet deep now in the ditch on an average.    I lived there a year before I bought; I rented the place then.   The defendant Davis treated me well; asked me to protect the bank there; I did so, before and after my purchase, up to last spring.    Had some trouble with Davis last spring; this suit grew somewhat out of that trouble; I wanted to find out what right, what law, he had there; I put a foot-bridge there in 1878; the same one is there yet; the same timbers reach across it yet; there is a bridge near there for wagons.

McGilvray testified that, in his opinion, the maintenance of the ditch would be an injury to the property of plaintiff.

Foot testified that the ditch is cleaned out every spring, and is wider than it was formerly; that it is unsafe for children.

Dr. Burdsall testified: Eighth street was used when this ditch was made; should think this property would be decreased in value one-third by the ditch running along there.    Cross-examined: I mean that if the ditch had never been made the property along there would be worth one-third more than it is.   It is worth that much more on Ninth and Tenth streets, where there is no ditch; don't know anything about the ditch in this particular neighborhood.

Harrington, witness: The ditch appears somewhat wider and the sidewalk a foot narrower than seven years ago.

Pomeroy: Think this property has been injured by the

maintenance and operation of the ditch in the last six years, but cannot say to what extent. The ditch has been used for running this mill in the same place, just where it now runs, ever since 1864.

Daniel Witter: The maintenance of the ditch makes the property of less value than it would be if the ditch was not there. This difference is from one-third to one-half. Cross-examination: This ditch has been maintained from 1865 to the present. I don't know what damage the ditch has done to the property since 1877. Permission was obtained from the city council to construct the ditch, in 1865. I say this from having examined the record. ·

Cook: I should judge that the maintenance of the ditch has diminished the value of this property for any use to which it may be reasonably put for the past six years from one-third to one-half. Cross-examination: I mean, if the ditch wasn't there at all, the property would be worth from one-third to one-half more than it is now. It is worth one-third more now, at the least, than it was in 1877. Redirect-examination: The ditch has not increased this value, but all property has advanced.

Plaintiff rests.

Testimony on behalf of defendants. O. A. Whittemore: I was one of the original corporators, in 1864, of this ditch; it was surveyed and the work of construction contracted for in March or April, 1864.

Davis, one of the defendants: The ditch averages two feet and two inches in depth. Has not been increased in depth or width for the last six years. From the east side of the ditch in front of the premises in question to the opposite side of the street the distance is seventy feet, unobstructed. The sidewalk is ten feet and six inches between plaintiff's fence and the outside of the ditch bank, and fourteen feet and seven inches from his fence to the water edge. The entire sidewalk is just as it was when plaintiff bought the property, and has not been

decreased in width in six years, nor in that time has the ditch damaged his property at all; has not been on his ground; he has never made any claim of damages until lately. He was friendly until a year ago; he asked permission to plant willows on the bank to keep up the bank. I told him I should like to have him do so; he said the ditch was no detriment to him; the first complaint about the ditch was about a year ago, when we had a little trouble. Property on the ditch is worth no less on that account now than it was six years ago, nor does the ditch affect it differently. There was not a house on that street between the mill and the head of the ditch eighteen years ago, when we took possession of the ditch; the first house was in 1870. The first settlers in this vicinity settled directly on the ditch; some prefer to live on the ditch; they get lots cheaper than if the ditch was not there. The ditch is bridged by the city on each side of plaintiff; his foot-bridge spans the ditch now just as it did several years ago when he built it.

Hon. H. P. H. Brownwell: Have lived opposite the mill for thirteen years. The ditch has been an inducement, on account of the water for irrigation and for trees, to many to buy property along it. The property in that neighborhood is a good deal higher in value now than in 1877. Don't know any reason why the ditch would depreciate the property any more than in 1877; the situation is unchanged.

Witnesses Raynolds and Reynolds testified to nothing pertinent.

Sleeth: No testimony of importance admitted.

Taylor: The ditch is a benefit to mine and other property along it for irrigation; don't know whether it's a benefit to plaintiff's property or not.

General Case: I think all the damage was done when the ditch was built, and not since 1877; from my knowledge of the ditch, as former city councilman, and from

recent examination as engineer, I don't think the property of plaintiff has depreciated in value on account of the ditch since 1877; I don't say the ditch is no disadvantage to it.

Terry: The price of property all along the ditch in the neighborhood of plaintiff has gone up since 1877; the plaintiff's property is of no less value now by reason of the ditch than in 1877. The ditch has not been enlarged there; the sidewalk is in good condition and about as wide as any in town. I walk by there nearly every day. Cross-examination: Some of the lots on the ditch sell for more than those away; mine did. I wanted it because the ditch was there. I can name a hundred benefits it would be to me.

Crisman: Helped measure the ditch; it will average two and a half feet in depth at this place; not been enlarged or increased in depth or width. Have seen nothing to indicate any damage to plaintiff's property by the ditch; sidewalk is in good condition, and nearly full width, ten feet two inches from fence to bank; sidewalks are usually twelve feet.

Ferris: Have worked on the ditch for the last two years, and am familiar with it; it has not been enlarged. The depth is two feet two inches. The flumes are the same as when I first knew the ditch and its capacity in 1871. Don't think it has done any damage to plaintiff's property since 1877.

Shields: Work in defendants' mill. The ditch has not been enlarged.

Witnesses Mackintosh and Henderson testified to nothing material.

J. K. Mullen, one of the defendants: The ditch has not been enlarged; it is a little over two feet deep. There was only one house in the locality of plaintiff's premises in 1871, when we took the ditch. The ditch has not depreciated property. The fact that the ditch was there,

has tended to give the whole of the property along there a less value. The plaintiff's lot is three times the value now that it was in 1877.

Defendants rest.

Plaintiff, recalled in rebuttal, testified: I never told Davis that the ditch was no detriment to me.

From the foregoing summary of the testimony in the case, it is apparent that two conclusions can be legitimately drawn. *First,* that no specific injury, peculiar to the plaintiff, accruing by reason of the ditch since his purchase of the property in question, was proved, nor were any facts established upon which the jury were warranted in computing or awarding damages in any specific sum whatever. *Second,* that about the only way in which it was sought, on behalf of the plaintiff, to prove that he had suffered injury, was by attempting to show that the market value of his property would have been greater if the ditch had never been constructed or should now be entirely removed. This was not a proper measure of damages recoverable by plaintiff, nor was it even averred in the complaint as a ground of recovery, and the admission of such testimony was error.

In the case of *The City of Denver v. Mullen et al.* 7 Colo. 345, which involved the rights of the same parties appellant to maintain this ditch in the street here in controversy and other streets, as against the city, we held that the city accepted the dedication of these streets, subject to the prior lawfully acquired right of the ditch company to construct and maintain the ditch where it runs, and for the purpose to which it is now applied by these appellants. Hence no recovery can be had for damages incident to the construction, existence and maintenance of the ditch within the scope of the lawful authority under which said ditch was constructed and is maintained. In other words, the ditch existing by lawful authority, its proprietors are not liable for damages

resultant from such existence of the ditch *ipso facto*, merely. Where one buys a city lot, bordering upon ground set apart or dedicated to any public use, he takes it subject to all the annoyances incident to the purposes of the dedication. If he buys his lot adjoining a street, he takes it subject to the rights of the public to use the street for all the appropriate purposes of a street. *City of Morrison v. Hinkston*, 87 Ill. 587; *City of Denver v. Bayer*, 7 Colo. 113. It may be admitted that the use of this ditch for the purposes to which it is applied by appellants is not one of the ordinary or legitimately contemplated purposes of a public street, but, inasmuch as such use of the ditch, as held in the case of *The City of Denver v. Mullen*, above referred to, is an easement subject to which the city has accepted the dedication of the streets through which it passes, the appellee purchased his lot subject to the use of the street, with the easement in question; for he certainly acquired no greater rights, in this respect, by his purchase, than the city or the public, by the acceptance of the dedication under the existing rights of the ditch proprietors.

Had appellee averred and proved that the damages sought to be recovered resulted from an unlawful, improper or negligent manner in the use of said ditch by the appellants, or had the ditch been constructed subsequent to his purchase of his lot, the case would have presented an entirely different question. In the latter contingency a right of action for damages would lie if depreciation in value resulted by virtue of the provisions of our constitution. *City of Denver v. Bayer, supra.*

When a consequence, which would otherwise constitute even a nuisance, is a necessary and probable result of an act done in pursuance of legislative authority, the grant of such authority, if not obnoxious to constitutional objections, operates as a protection, but if done unnecessarily or in a negligent or improper manner, it cannot then be said to have been contemplated by the

grant, and, therefore, not authorized thereby. Wood's Law of Nuisances, secs. 746, 747. . While such an authorized act, exercised within the fair scope of the grant, cannot be a public nuisance, it *may* be a private one, and the grant affords no protection to an action for resultant damages; and for consequential injuries resulting from an excess of power, or from an exercise of lawful powers in an improper, careless or negligent manner, a remedy may be had. Id. secs. 750–757.

The attempt of appellee to prove depreciation of his property by reason of the existence and maintenance of the ditch, admitted over objection thereto by counsel for appellants at the trial, was, nevertheless, met on cross-examination and by testimony on the defense which, we think, shows conclusively that not only was there no depreciation from such cause, but that the property had increased in value since the appellee's purchase, notwithstanding the ditch; although it might be worth still more if the ditch were not there. If the jury founded their verdict upon a belief that appellee established the fact that his property had depreciated, or was of less value, by reason of the maintenance and proper use of the ditch since his purchase, the verdict and judgment thereon could not stand upon such a finding for the reasons hereinbefore stated. If the verdict was based upon a finding that specific damages were proved from any other cause of action alleged in the complaint, it has no better support, for it is evident from all the testimony that appellee utterly failed to state and prove specific damages resulting from any act of appellants for which he would be legally entitled to recover.

The verdict and judgment being therefore clearly contrary to both the evidence and the law of the case, the judgment must be reversed.

*Reversed.*