PLATTE & DENVER C. & M. CO. v. DOWELL, ET AL.

1. CONTRIBUTORY NEGLIGENCE NOT PRESUMED.—The law does not presume contributory negligence; unless appearing in the proofs offered by plaintiff it is a defense to be established as are other defenses.

2. INTERFERENCE WITH LAWFUL CANAL WITHIN CITY LIMITS.—Where a canal is lawfully constructed and its maintenance and use within the corporate limits of a city are duly authorized, in the absence of statute a private action cannot be maintained against its owners without averring and proving special damages caused by an improper or negligent exercise of the lawful rights pertaining thereto. Nor can the city arbitrarily close the headgate of such a canal or compel its owners to construct bridges at its intersections within the city streets.

3. DISTINCTION BETWEEN STATUTES IMPOSING BURDENS.—A broad distinction exists between statutes indirectly imposing burdens upon individuals or corporations for the accommodation and convenience of the public or for private aggrandizement, and statutes imposing such burdens for the purpose of promoting the public peace, health and safety. Provisions are often upheld regulating the exercise of corporate powers so as to avert dangers menacing life and property when such provisions would be annulled if designed simply to subserve the public convenience or promote purely private interests.

4. CHARTER OF CORPORATION A CONTRACT.—The charter of a private corporation is a contract within the meaning of the federal constitution, the obligation of which cannot be impaired by subsequent legislation.

5. PROVISIONS OF CONTRACT SUBJECT TO POLICE REGULATIONS.—But such contracts contain no express or implied provision authorizing corporations to transact their business in a manner detrimental to the public peace, health or safety. And regulations adopted under the police power for the purpose of protecting the public health or safety, may be valid. This power is an essential attribute of sovereignty, and a state cannot by legislation barter away the right to exercise it.

6. VALIDITY OF POLICE PROVISIONS.—The police power may be abused. If a statute purporting to have been enacted to protect the public health, morals or safety has no real or substantial relation to those objects or is a palpable invasion of constitutional rights, the courts should declare it void.

7. SIMILARITY OF RELATIONS TO POLICE POWER OF CORPORATIONS AND INDIVIDUALS.—Private corporations occupy in respect to the

police power the same attitude as private individuals engaged in similar branches of business. They must submit to proper police regulation in the interest of society, even though such regulation operate to injure the business authorized and to diminish the value of the property employed therein.

8. DISPOSITION OF COURTS TO MAINTAIN VALIDITY OF STATUTES.— Courts will not presume dishonest or improper motives on the part of legislative bodies. And they never annul statutes merely because the legislative judgment or discretion is improvidently exercised.

9. CONSTITUTIONAL RECOGNITION OF LEGISLATIVE CONTROL OF CHARTERS.—Section 3, article 15 of the constitution recognizes a legislative right to alter, revoke or annul upon condition just to the corporation, any part or all of the corporate charter; but it does not control the exercise of the police power in regulating the transaction of corporate business.

10. NEGLIGENCE PER SE—FAILURE TO PERFORM STATUTORY DUTY.— The failure to perform a statutory duty, specifically imposed under the police power for the protection of the public, is negligence *per se*. And in the absence of contributory negligence a recovery may be had for an injury thereby occasioned.

*Appeal from District Court of Arapahoe County.*

THE statute of 1887 considered in the following opinion reads:

"Sec. 1. That every corporation and company whether created by special act, or organized under the general incorporation laws of this state, and every partnership, person or persons who now, or may at any time hereafter, own or control any canal or ditch, or any part thereof, being two feet in width or over, and carrying water to the depth of twelve inches or over, which canal or ditch, or any part thereof, is within the corporate limits of any city denominated in the law as of the first class, or any city existing by special charter of a population equal to or exceeding said cities of the first class, or any of the additions thereto, shall, at their own expense within sixty days after this act shall have taken effect, confine, flume, and cover over, all or any part of such canal or ditch, whether located on, or across private property, public highways or alleys in said city or additions thereto,

in a reasonable and sufficient manner and with such materials, as will render such fluming or covering, safe and a sure protection to the lives and property of the inhabitants of said city ; and any such corporation, company, partnership, person or persons, shall at all times thereafter keep and maintain any and all such structures confining, fluming and covering of such canal and ditch in good order and repair at their own expense.

" Sec. 2. Such corporation, company, partnership, person or persons, shall, at their own expense, safely and securely lattice or slat the head of such flume or covering with proper materials, so that persons or animals cannot accidentally enter such flume or covering at the head thereof and pass, or be carried down the current of said canal or ditch, and shall thereafter maintain and keep the same in good order and repair at their own cost and expense.

" Sec. 3. If any such corporation, company, partnership, person, or persons, shall fail or refuse to comply with any of the provisions of the two preceding sections, such corporation, company, partnership, person or persons, shall forfeit and pay to the county, for the use of the common school fund, the sum of fifty dollars for each and every day such failure or refusal shall continue ; to be recovered by a civil action in the name of The People of the State of Colorado, in any court of competent jurisdiction. *Provided*, That nothing in this act shall be construed to bar an action for special damages by any person who shall have suffered such damages by reason of any failure to comply with any of the provisions of this act."

Messrs. MARKHAM & DILLON and Mr. E. A. CLARK, for appellant.

Mr. WILLIAM E. WHITE, for appellee.

MR. JUSTICE HELM delivered the opinion of the court.

Appellant was and is the owner of a canal conveying

a large volume of water through a thickly populated portion of the city of Denver for milling purposes.  This canal being uncovered, George E. Dowell, a minor son of appellees, fell in and was drowned.  The present action was brought by appellees under section 1509 of Mills' Annotated Statutes to recover damages on the ground of negligence resulting in the decease of the said George E., as aforesaid.  The only default or neglect averred in the complaint was the failure and refusal of appellant to confine, flume or cover its canal as required by an act of the legislature, approved March 29, 1887.  Session Laws 1887, p. 65.

The pleadings and evidence present two questions for adjudication: *First*, did the failure of appellant to obey the statute of 1887 by covering its canal and thus rendering the accident impossible, constitute such negligence *per se* as creates an actionable liability for private injuries that would not have been suffered but for the failure ; and *second*, does the evidence show contributory negligence on the part of deceased or on the part of appellees ?  These questions will be considered in inverse order.

No one saw the accident nor is there any circumstantial evidence indicating precisely where or how it occurred, save that deceased was drowned in appellant's canal.  Hence there is no proof concerning the acts of deceased or circumstances immediately attending his death.  The law does not presume contributory negligence ; unless appearing in the proofs offered by plaintiff, it is a defense to be established as are other defenses.  Wharton on Negligence, sec. 423 ; *City v. Dunsmore*, 7 Colo. 329 ; *D. & R. G. Ry. Co. v. Ryan*, ante, p. 98 ; *R. R. Co. v. Gladmon*, 15 Wall. 401.  The defense of contributory negligence on the part of appellees is based upon the fact that they permitted deceased to be at large unattended.  He was afflicted with epilepsy, but the convulsions were infrequent, occurring not oftener than from five to seven times a year.  A number of the witnesses saw him at different times while having these convulsions and his schoolmates sometimes called him " Crazy George," but a

speedy recovery always followed the paroxysms, and his mind does not appear to have been seriously effected. He was fourteen years of age, and aside from the epileptic tendency in good physical condition. Much of the time when not in school or otherwise engaged he pursued the vocation of boot-black, occasionally earning as high as six dollars per week; which earnings he always brought home to his mother. He was industrious and trustworthy, being employed upon all kinds of errands,—in general, he seems to have been amply able to protect himself. We are not prepared to say that under these circumstances it was negligence on the part of appellees to permit deceased to go about unattended. Besides, the questions of contributory negligence by appellees and by deceased respectively were submitted to the jury under proper instructions, and certainly the record does not warrant disturbance of the verdict by us upon either of these grounds.

We turn therefore to the remaining question, which is the one mainly relied on by counsel for appellant. It is admitted that Denver is a city of the first class, and there is no dispute but that appellant's canal is covered by the terms of the act of 1887. The second defense, to which the general demurrer was sustained, embodies an emphatic denial of any duty on the part of appellant to comply with the plain requirements of the statute. The constitutionality of this statute is thus squarely challenged.

It must be conceded at the outset that the canal belonging to appellant was lawfully constructed and that its proper maintenance and use within the corporate limits of the city were duly authorized. *City v. Mullen,* 7 Colo. 345; *P. & D. D. Co. v. Anderson,* 8 Colo. 131; *Walley v. P. & D. D. Co.,* 15 Colo. 579.

But counsel further confidently asserts that the question now raised is, by virtue of the *Mullen* and *Anderson* cases, *supra, res adjudicata.* The correctness of this assertion cannot be admitted. The *Anderson* case holds that a private action against appellant could not be maintained without

averring and proving special damages growing out of an improper or negligent exercise of its corporate powers in connection with the canal. When that decision was rendered, no statute existed imposing the duty upon appellant of fluming or covering its canal, and obviously a different rule in relation to private actions may now be applicable. The *Mullen* case declares that the city cannot arbitrarily close the headgate of appellant's canal and destroy its business; also, that the municipal authorities cannot compel appellant to construct bridges at the intersections of its canal with the city streets.

It is clear that the question now before us rests upon a different principle from that involved in the *Mullen* case, *supra*, on which particular reliance is placed. Municipal highways are maintained for the convenience and benefit of the public. They are under the control of the municipal authorities upon whom is imposed the duty of keeping them in good condition for use. Bridges constitute a feature of those improvements which, like grading, are essential to the usefulness of the highway and the accommodation of the public. But the statute under consideration does not profess to deal in any manner with the public convenience. Apparently its sole purpose is to secure the protection of life and property. A broad distinction is recognized between statutes indirectly imposing burdens upon individuals or corporations for the accommodation and convenience of the public, or for private aggrandizement, and statutes imposing such burdens for the purpose of promoting the public peace, health and safety. Provisions may often be adopted regulating the exercise of corporate powers so as to avert dangers menacing life and property when such provisions would be held invalid if designed simply to subserve the public convenience or to promote purely private interests. *State v. Noyes*, 47 Me. 187; Sedgwick on Con. of Stat. & Const. Law (2d. ed.), p. 608, note.

The specific ground of attack upon the constitutionality of the statute under consideration is that since the duty

thereby imposed upon appellant of covering its canal is not specified in its original charter, the act clearly impairs the obligation of the contract existing between it and the state.

The doctrine that the charter of a private corporation is a contract within the meaning of the federal constitution has never been successfully assailed since the decision in *Dartmouth College v. Woodward*, 4 Wheaton, 518. And that obligation of this contract cannot be impaired by subsequent legislation follows as a matter of course. *Com'rs v. Colo. Seminary*, 12 Colo. 497. But a long and unbroken line of decisions, including many by the Supreme Court of the United States, hold that regulations adopted under the police power for the purpose of protecting the public health or safety do not necessarily impair the obligation of the corporate contracts above mentioned. This power is an essential attribute of sovereignty. So jealously is it guarded that a state cannot even by the most solemn legislation barter away or curtail the right to exercise it. Tiedeman Lim. of Police Powers, sec. 189, and cases cited.

Private corporations occupy in respect to the police power precisely the same attitude as private individuals engaged in similar branches of business. The fact that by their articles of incorporation or charters they obtain certain rights and privileges and are empowered to transact certain kinds of business in certain specified places does not exempt them from police regulation in the interest of society.; and this is true even where such regulation operates to injure the business authorized and to diminish the value of the property employed therein. In addition to other cases heretofore and hereafter cited, see *Fertilizing Co. v. Hyde Park*, 70 Ills. 634; same case, 97 U. S. 659; *The Corporation v. The Mayor*, 5 Cowan, 538; *The People v. Hawley*, 3 Mich. 330. Every regulation of this kind "operates as a restriction of the enjoyment of the corporate franchise." Tiedeman, sec. 189, *supra*. "The acknowledged police power of the state extends often to the destruction of property." Mr. Justice McLean in *Thurlow v. Commonwealth*, 5 How. 504. Con-

tracts between the state and private corporations contain no express or implied provision authorizing the corporations to transact their business in a manner detrimental to the public peace, health or safety. This view has been applied even where the business to carry on which the corporation was expressly organized is of such a nature as to become essentially an insufferable nuisance under circumstances brought about by collateral and independent changes in the vicinity of the place where it is carried on. *Fertilizing Co. v. Hyde Park, supra; Corporation v. The Mayor, supra.*

That the police power of the state may be made an instrument of injustice and oppression cannot be questioned. And when it is plainly invoked by the legislature merely as an excuse for the infliction of needless injury upon private corporations, the judiciary should promptly interfere to prevent the wrong. Mr. Justice Harlan referring to this subject says: " The courts are not bound by mere forms, nor are they to be misled by mere pretenses. They are at liberty— indeed, are under a solemn duty—to look at the substance of things, whenever they enter upon the inquiry whether the legislaure has transcended the limits of its authority. If, therefore, a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the constitution." *Mugler v. Kansas,* 123 U. S. 623.

But if a statute is evidently designed to promote the public health, the public morals, or the public safety, and especially if it tends to produce the effect designed, it is valid so far as this specific objection is concerned unless there be a palpable invasion of constitutional rights. Appellant's canal is from eight to fifteen feet wide and from two to four feet deep; it extends a distance of several miles through a thickly populated portion of the city of Denver; the incline is such that the large volume of water therein necessarily

flows with great rapidity ; it is not inclosed by fences, nor is any other precaution taken for the protection of the public in connection therewith.   No argument or illustration is needed to demonstrate the fact that this canal is, under the circumstances, a constant menace to life and property. Provisions requiring that it be covered and that a screen be placed at the headgate, or that some other means be adopted for the protection of the public, are not unreasonable precautions.

The statute does not forbid or attempt to interfere with the use of the canal in carrying on appellant's business.   It does not undertake to deprive appellant of its property or the enjoyment thereof.   Appellant can without injury to the usefulness of the canal so maintain it as not to endanger the safety of life and property; and, as already in effect suggested, it has no constitutional right to perpetuate this danger.   The fact that the perils against which the statute is aimed arise from the unexpected growth of the city since the incorporation of appellant and the construction of its canal does not affect the foregoing conclusions.   *Corporation v. The Mayor, supra ; Fertilizing Co. v. Hyde Park, supra.*

The heavy expense imposed upon appellant by the statute is unfortunate.   But police regulations almost always impose burdens of greater or less magnitude, and therefore result in hardship.   We cannot say that the statute was intended, as asserted by counsel, to bankrupt appellant and ruin its business.   The act is general and applies to all canals of the dimensions specified, in cities of the first class, whether owned by corporations, partnerships or individuals.   There is nothing upon its face to indicate that the members of the legislature thought at the time of its enactment of this or of any other particular canal.   Courts will not presume dishonest or improper motives on the part of legislative bodies.

Considering the expense and magnitude of the work devolved upon appellant, sixty days seem to be a very short period for its completion.   But we cannot as a matter of judicial cognizance declare that this time was absolutely in-

sufficient.  Courts never annul statutes merely because the legislative judgment or discretion is improvidently exercised. And we are not prepared to hold that the manner designated in the act before us for accomplishing the end in view and the time therein specified are so unreasonable as to indicate legislative malice or to justify judicial interference.

Finally, it is contended on behalf of appellant that by virtue of sec. 3, art. 15 of the constitution the legislature could not impose upon appellant the duty of covering its canal without providing for reimbursement of the expense incurred.  Said section 3 reads : " The general assembly shall have power to alter, revoke or annul any charter or incorporation now existing and revocable at the adoption of this constitution, or any that may hereafter be created, whenever in their opinion it may be injurious to the citizens of the state, *in such manner, however, that no injustice shall be done to the incorporators.*"  This provision does not relate to the exercise of the police power in regulating the transaction of corporate business.  It recognizes a legislative right to alter, revoke or annul any part or all of the corporate charter ; under it, the legislature may take away any portion of the powers, privileges and immunities expressly or by necessary implication granted to private corporations, provided protection against injustice be given.  But the statute under consideration was not intended to alter, revoke or annul the charter of appellant or of any other corporation.  Neither was it intended to take away any existing right, power or privilege conferred by such charter.  It was, as already indicated, simply designed to so regulate the control and management of canals like that of appellant as to insure the protection of life and property.

The statute is not unconstitutional, and had appellant obeyed its command the accident would not have happened. The failure of appellant to perform its statutory duty in the premises was negligence *per se*, and no contributory negligence being shown, appellees were entitled to recover.  *Kein v. U. R. & T. Co.*, 90 Mo. 314 ; *St. L. V. & T. H. R. R. v. Dunn,*

70 Ill. 197; Wharton's Law of Negligence, secs. 442, 804, and cases cited. In support of the various propositions above announced, reference is made to the following additional citations: *U. P. Ry. Co. v. De Busk*, 12 Colo. 294; Cooley Const. Lim. (5th ed.) 710, *et seq.;* Tiedeman's Lim. of Police Powers, secs. 190, 191; Sedgwick's Con. of Stat. & Const. Law, p. 605, *et seq.* and notes; *I. C. Ry. Co. v. Slater*, 129 Ill. 91, and cases cited; *Stone v. Mississippi*, 101 U. S. 814; *Beer Co. v. Massachusetts*, 97 U. S. 25; *Patterson v. Kentucky*, 97 U. S. 501; *Providence Bk. v. Billings*, 4 Peters, 514; *Rodemacher v. Railway Co.*, 41 Iowa, 297.

The judgment of the court below is

*Affirmed.*