**Marion K. FORREST and Julia A. Forrest, Plaintiffs-Appellants,**

v.

**IMPERIAL DISTRIBUTION SERVICES, INC., a Delaware corporation; and Paul F. Larned, Defendants-Appellees.**

**No. 83CA0627.**

Colorado Court of Appeals, Div. III.

April 25, 1985.

Rehearing Denied June 6, 1985.

Certiorari Granted Nov. 4, 1985.

John A. Criswell, P.C., John A. Criswell, Englewood, Myrick & Newton, P.C., William E. Myrick, Denver, for plaintiffs-appellants.

Barrows and Sisun, P.C., Thomas H. Barrows, Steven P. Hemmerle, Denver, for defendants-appellees.

STERNBERG, Judge.

In this action to recover damages for personal injuries and loss of consortium, the plaintiffs, Marion K. Forrest and his wife, Julia A. Forrest, appeal from a judgment entered on a jury verdict in favor of the defendants, Imperial Distribution Services, Inc., and Paul L. Larned, one of Imperial's employees. Plaintiffs contend that the trial court erred in refusing their tendered instructions on inherently dangerous and ultrahazardous activities. We reverse and remand the matter for a new trial.

Mr. Forrest was employed by Landfill, Inc., as a heavy equipment operator at a solid waste disposal site located in Adams County, Colorado. Imperial is in the warehousing business and occasionally disposes of various goods and materials for its customers at the dumpsite. One of Imperial's customers is the manufacturer of a highly caustic liquid cleaning compound known as "Super Trump."

On the day of the accident, Larned was instructed by his supervisor to take a 15-gallon container of Super Trump and various other items to the dumpsite and dispose of them in a "special burial." A special burial is a procedure used by Landfill, Inc., at the request of its customers, to

prevent materials from being taken or removed from the dumpsite.

After Larned unloaded the materials at the dumpsite, one of Landfill's employees drove a large trash compacting machine over them causing the 15-gallon container of Super Trump to burst open. Some of the Super Trump splashed on Mr. Forrest, who was standing nearby, and as a result, Mr. Forrest was permanently blinded in his right eye, the vision in his left eye was impaired, and his face was severely burned.

## I.

■■■ It is axiomatic in the law of negligence that the greater the risk, the greater the degree of care required to avoid injury to others. *Blueflame Gas, Inc. v. Van Hoose*, 679 P.2d 579 (Colo.1984). Here, we conclude that given the highly caustic nature of the cleaning compound, the jury could have reasonably determined that it was a dangerous substance and that the defendants, in delivering the material to the dumpsite, were engaged in an inherently dangerous activity. As noted by the court in *Western Stock Center, Inc. v. Sevit, Inc.*, 195 Colo. 372, 578 P.2d 1045 (1978):

"Thus, an inherently dangerous activity need not be extremely or even highly dangerous, but must only present a foreseeable and significant risk of harm to others if not carefully carried out. The determination of what constitutes an inherently dangerous activity should be made by the trier of fact, which is in the best position to evaluate the inherent danger of the work in different circumstances."

■■■ The defendants contend that after the cleaning compound was delivered to the dumpsite, Landfill, Inc., and its employees were solely responsible for the risk of harm or danger presented. We disagree.

Although the "special burial" procedure was carried out by Landfill's employees, the jury could have reasonably determined the defendants delivered the cleaning compound to the dumpsite without adequately warning Landfill's employees of the poten-

tial danger and that this failure to warn adequately was the proximate cause of the resulting injuries. *Blueflame Gas, Inc. v. Van Hoose, supra.*

■■■ The defendants further contend that the higher degree of care standard is required only when: (1) the activity is inherently dangerous; (2) the defendant possesses expertise in dealing with the activity; and (3) the general public would not be able to recognize or guard against the potential danger. We disagree.

The cases relied on by the defendants in support of this contention are inapposite. In *Federal Insurance Co. v. Public Service Co.*, 194 Colo. 107, 570 P.2d 239 (1977), the court merely held that the above criteria constituted "compelling reasons" to continue to require electric utilities to conduct their business with the "highest degree of care." In *Mannhard v. Clear Creek Skiing Corp.*, 682 P.2d 64 (Colo.App. 1983), this court held that the operator of a ski area was not required to exercise the highest degree of care to protect skiers from avalanche danger because (1) the avalanche danger was a natural occurrence which was not caused by the operator's activities and (2) the danger complained of was fully known and appreciated by the skier himself. But, neither of these cases established the stated criteria as the necessary and sufficient conditions for the imposition of a higher degree of care.

Here, the evidence established that the defendant Larned had actual knowledge of the caustic nature of the cleaning compound and of the dangers it posed if exposed to the body. Thus, as noted previously, the jury could reasonably have determined that the danger complained of was caused by the defendants' activities in delivering the cleaning compound to the dumpsite without adequately warning Landfill's employees of its caustic nature and that, because of the lack of warning, Mr. Forrest was not able to recognize or guard against the potential danger.

■■■ If a party's legal theory is supported by the evidence and if it is consistent with existing law, a party is entitled to

a jury instruction on that theory. *Davis v. Cline,* 177 Colo. 204, 493 P.2d 362 (1972). Hence, we conclude that the trial court erred in not submitting the plaintiffs' tendered instruction which would have permitted the jury to determine as a factual matter whether the defendants were required to exercise the highest degree of care or simply "reasonable care" in delivering the cleaning compound to the dumpsite. *Western Stock Center, Inc. v. Sevit, Inc., supra.*

## II.

■ We disagree with the plaintiffs' contention that the trial court also erred in refusing their tendered instructions on ultrahazardous activities. In Colorado, strict liability for ultrahazardous activities has been imposed only in cases involving blasting with dynamite, *see, e.g., Garden of the Gods Village, Inc. v. Hellman,* 133 Colo. 286, 294 P.2d 597 (1956), and impounding of water, *see, e.g., Garnet Ditch & Reservoir Co. v. Sampson,* 48 Colo. 285, 110 P. 79 (1910). And, we perceive no basis upon which we may extend the doctrine to the activities complained of here.

The judgment is reversed and the cause is remanded for a new trial consistent with the views expressed herein.

TURSI and METZGER, JJ., concur.