GREELEY IRRIGATING CO. ET AL. V. HOUSE.

1. DAMAGE BY ESCAPING WATER FROM IRRIGATING DITCH — STATUTORY LIABILITY OF DITCH OWNERS. — Where owners of an irrigating ditch recklessly attempted to convey a volume of water through it far beyond the reasonable capacity of the ditch to safely carry, and in so doing knowingly caused the ditch to overflow its banks, thereby flooding the land of an adjacent proprietor, and destroying his fruit trees and vines growing thereon, they became liable to respond in damages under General Statutes, sections 312, 1728, 1733.

2. UNAVOIDABLE ACCIDENT AS A DEFENSE. — A defense based on unavoidable accident is not available where it already appears that the gross carelessness and negligence of the defendants contributed to the injury complained of.

### Appeal from District Court of Weld County.

Messrs. J. M. FREEMAN and C. A. BENNETT (RALPH TALBOT, of counsel), for appellants.

Messrs. H. N. HAYNES and J. W. McCREARY, for appellee.

RICHMOND, C. This action was brought to recover damages resulting from the alleged negligence of defendants, appellants herein, in the use and maintenance of an irrigating canal. By the complaint it is alleged that the plaintiff, appellee herein, was the owner of a certain lot of land in the city of Greeley, upon which she had set out apple trees, raspberry canes and strawberry plants; that the defendants, the Greeley Irrigating Company and the city of Greeley, were the owners of, and were operating, an irrigating ditch known as "Canal No. 3;" that said irrigating ditch was constructed along and near the premises of plaintiff; that on or about June 16, 1885, the defendants negligently and wrongfully caused and permitted the water to run in said canal bank full and beyond the capacity of said canal to carry water; that, solely by reason of the negligence and wrongful management of said canal by said defendants, the water over-

flowed the banks thereof and flowed down a steep decline upon land below, forming a pond of about five acres in extent and about two feet deep, from which point the water gradually flowed and found its way through the intervening land to and upon the land of plaintiff; that about three acres of plaintiff's land became submerged, and so remained submerged for a period of about two months, which resulted in the destruction of the apple trees, raspberry canes and strawberry plants, to plaintiff's damage in the sum of $1,340.

The defendants answer, denying negligence, or that they caused or permitted the water to run in said canal beyond the capacity of said canal to safely carry water. They admit that on or about the 16th of June, 1885, there was a breach or washout in the bank of their said canal, but deny that it was of the extent alleged in the complaint, and aver that the stream of water which flowed through the breach ran down a steep decline, and into a pond which had existed long prior to the 16th of June, 1885; that said pond is the identical pond or submerged area mentioned in plaintiff's complaint; and further aver that the break was an unavoidable accident caused by gophers burrowing in the bank; that no degree of skill or foresight of defendants could have prevented the same; and deny that any water from said canal, on account of said break, ever found its way upon the land of plaintiff, or that plaintiff was damaged on account of said break in said canal.

Plaintiff replies to the answer, and denies that the breach was an unavoidable accident, or that it occurred without fault of defendants, or was caused by the burrowing of gophers in the bank of the canal.

The cause was tried to a jury, who returned a verdict against defendants for the sum of $750. Motion for a new trial was denied, and judgment entered against the defendants for the amount of the verdict. To reverse this judgment defendants prosecute this appeal.

There are several assignments of error, but appellants in their brief discuss but two: "(1) That the verdict was contrary to the law and the evidence; (2) that the court erred in its instructions to the jury."

The testimony tends to prove that appellee's property was seriously injured. Apple trees, raspberry canes and strawberry vines, with the growing fruit thereon, were destroyed by means of the water escaping from the irrigating canal owned and managed by appellants.

E. P. House, testifying on behalf of the plaintiff, says that four days prior to June 17, 1885, the ditch had been running bank full of water, or within an inch and a half of the top; that on Saturday, June 13th, he informed the superintendent, Levi Cole, of the danger, and expressed to him his apprehensions of serious injury to his wife's property; that Cole replied: "I have been ordered by the trustees to run the ditch bank full until they get through irrigating," to which House remarked, "It will burst pretty soon, and drown us out." Cole responded that he "did not care if it flooded the whole damn town; the trustees would have to pay the damages." House testified to a further conversation, in which Cole stated that two of the trustees of the irrigating company, J. E. Davis and Dr. Camp, were urging him to supply more water, and that Cole informed them that the water was running as high or higher than the ditch would safely carry, and mentioned a break west of appellee's land, and another break above the land of Alex. Moore. The trustees replied that they wanted him to run more water to them, if it broke the ditch from one end to the other.

Joseph Stowell testified that Supt. Cole had said a day or two before the break: "I know I am running too much water, but I have to obey orders of those fellows on the delta."

Charles Nichols testified on behalf of plaintiff that on the morning on which the break occurred the main ditch was running as much as the bank would carry. At his

place they had to lay down planks to get to the stable, owing to the water running out of the ditch, and flooding between his house and barn. "The water came to the top of the ditch bank at our place, and overflowed. The water at the break was running over the top of the bank, and ran for about two feet before it reached the hole." Superintendent Cole, on cross-examination, testified that on Sunday, immediately preceding the break, he went to the head-gates of the defendants' ditch in company with Dr. Camp, one of the trustees of the company, and raised the head-gate a trifle. This was the next day after Mr. House had called his attention to the fact that he was running the ditch too full, and that he was afraid the ditch would break. That he raised the head-gate, at the request of Dr. Camp, and expressed the opinion that the ditch was running then as full as it would stand. That Dr. Camp replied, "I think we will try a little more water." If, instead of raising the head-gate, he had lowered it, it would have had a tendency to prevent danger from a certain rise in the river, or the ditch becoming too full. Various exhibits were introduced at the trial of the cause, and the attention of witnesses were directed to these exhibits, and the exact locality of the break was pointed out to the jury. Several witnesses testified on behalf of the plaintiff in addition to those above named; and their testimony, as we view it, tends to support the testimony of House, Nichols and Stowell. Superintendent Cole, as far as the abstract discloses, does not deny having used the language testified to by House. This and other testimony, it seems to us, was amply sufficient to warrant the jury in finding for the plaintiff.

Section 312, General Statutes, 1883, provides as follows: "Every ditch company organized under the provisions of this act shall be required to keep their ditch in good condition, so that the water shall not be allowed to escape from the same to the injury of any mining claim,

road, ditch or other property. * * *" Section 1728, id., provides that "the owner or owners of any ditch for irrigation or other purpose shall carefully maintain the embankments thereof, so that the waters of such ditch may not flood or damage the premises of others. * * *" Section 1733, id., provides that the "owner of any irrigating or mill ditch shall carefully maintain and keep the embankments thereof in good repair, and prevent the water from wasting."

It is admitted by appellants in argument that the above sections of the statute, properly construed, impose upon the owners a duty, and that "every ditch company is required to keep their ditch in such good repair and condition that the water of the same cannot readily and easily escape therefrom to the injury of any property; and especially such owners must not allow or permit the water to escape therefrom to the damage of other property."

Accepting this admission as being the true interpretation of the spirit and purpose of the sections above referred to, one cannot escape the conclusion that the plaintiff is entitled to recover for such injuries as resulted from negligence of defendants in the use and maintenance of the ditch. True it is that in the maintenance of the ditch the defendants were engaged in a lawful pursuit, and it is not necessary for us to extend the operation of these provisions beyond appellants' admission, so far as this case is concerned. The conclusion of the court in *Ditch Co. v. Anderson*, 8 Colo. 131, was that, for injuries resulting from an exercise of lawful power in an improper, careless or negligent manner, a remedy may be had. *Water Co. v. Middaugh*, 12 Colo. 443 (of opinion); 1 Thomp. Neg. 101.

It can, without doubt, be said that the defendants are responsible for any damage occasioned to plaintiff's property by reason of their failure or neglect to keep the ditch in a state of preservation and repair, and to so

maintain and manage the ditch as to prevent injury to plaintiff's property while they so use and control the same; and for any injury to the plaintiff's property caused by overflow of the waters entering the ditch, resulting either directly or indirectly from the negligence of defendants in keeping the same in good repair, or in the manner of its use while under their control, they are responsible in damages. *Richardson v. Kier*, 37 Cal. 263.

If there was a failure on the part of the defendants to comply with an express requirement of the statute in the construction, maintenance or use of this irrigating ditch, whereby injury resulted to the plaintiff, there can be no question but plaintiff is entitled to recover. In *Wilson v. Turnpike Road*, 21 Barb. 68, it was held that an "omission to comply with the statutory requirement is a nuisance for which a party injured without negligence on his part may claim damages. *City of Pekin v. Newell*, 26 Ill. 320."

The evidence and the authorities above recited satisfy us that the findings of the jury in this case were not contrary to the law and the evidence.

The next question presented for our consideration is the alleged error in the instruction of the court to the jury. In support of this contention the appellants call our attention to a certain portion of the charge given to the jury by the judge, and insist that it was wholly unwarranted by the evidence and by the law. It is a matter of no great difficulty for one to extract certain portions of a charge given by a trial judge, and to argue that such portions were wholly unwarranted by the law and the evidence in the case. The rule of this court, established by a number of cases, is, however, that the charge should be considered as a whole; and, when so considered, if it shall appear that the jury could not have been misled thereby, the cause will not be reversed.

We will consider the instruction under this rule. It is insisted that the court erred in not charging that the

defendants were only liable for want of ordinary care and diligence in maintaining the banks of their ditch, and the flow of water therein, and that by the charge he imposed an additional burden upon the defendants, who were carrying on a lawful enterprise of public necessity. The court, in substance, instructed the jury that, under the provisions of the statute, it was the duty of the defendants to keep their ditch in good condition, so that the water shall not be allowed to escape from the same to the injury of other property; that the object and intention of the various provisions of the statute is that, while ditch companies in towns and cities have a right to have irrigating ditches constructed, and to maintain and operate them, yet they must see to it that they so construct the banks of their ditches, and that they so operate and maintain the ditches, that the water thus found in the artificial channels shall not escape over or through the banks of the ditch and flood the premises of others, and do damage and injury to the property of others; and if, by reason of the negligence of the defendants in this case, either by leaving the banks in an improper condition, or by reason of suffering the water to run at so great a height that it would be liable to break over even good embankments, a quantity of water either great or small, provided it was of sufficient volume to do considerable damage, did so escape from defendants' irrigating ditch and flooded the premises of plaintiff, and injured her property, then she is entitled to recover from defendants the amount of damage that she thereby sustained. Further, that the burden of proof was on the plaintiff to show that this water broke through by the mismanagement or imperfect construction, repair or management of the ditch, and damaged property of the plaintiff; and the burden devolves upon the plaintiff to show the amount of damage to her property, or the value of the property destroyed.

Taking the charge to the jury as a whole, we are unable to escape the conclusion that the court instructed the jury correctly. It seems to us that the judge particularly called the attention of the jury to the fact that the plaintiff's right of recovery was based upon the negligence of the defendants, and that it was the duty of the plaintiff to prove to the satisfaction of the jury the extent of such negligence and the value of the property destroyed by reason of such negligence. The instruction, taken as a whole, does not go beyond the admitted liability of the defendants in appellants' brief. It does not extend the liability beyond the limits of the statute. It does not go to the extent of saying that a non-compliance with the statutory requirements is a nuisance, and a party injured thereby may recover his damages without proof of negligence, as was held in *Wilson v. Turnpike Road* and *City of Pekin v. Newell, supra.*

In reference to the defense based upon the claim that the accident was unavoidable and occurred wholly without fault on the part of the defendants, but resulted from the burrowing of gophers in the banks of the canal, it is sufficient to say that it is contrary to the testimony. The evidence shows that the defendants were grossly negligent; that they wholly disregarded timely warnings as to the inevitable result of their conduct in attempting to carry water beyond the capacity of the ditch; and, being themselves in fault, they cannot be permitted to take refuge under the plea of unavoidable accident.

The question of negligence was a question for the jury. It was for them to determine whether the defendants had kept, maintained and used the ditch according to the spirit and intent of the statute; and we are not prepared to say, after a careful review of the testimony embraced in the abstracts furnished by appellants and appellee, that their conclusion was incorrect. Satisfied as we are that the evidence warranted the verdict, and

that the jury were not misled by the instructions of the court, we think the judgment should be affirmed.

REED and PATTISON, CC., concur.

PER CURIAM.   For the reasons stated in the foregoing opinion the judgment is affirmed.

*Affirmed.*

MR. JUSTICE ELLIOTT, having presided at the trial in the cause below, did not sit in this cause.