[No. 8111.]

## NORTH STERLING IRRIGATION DISTRICT V. DICKMAN.

1. DAMAGES—*Measure Of—Growing Crops Destroyed*.  The measure of damages for the destruction of a growing crop, is the value of the crop, at the time of its destruction, if the injury had not occured. (171.)

2. —— *Damage to Lands by Seepage—Measure Of*, is the difference between its value, immediately before and immediately after the injury. (174.)

3. EVIDENCE—*Relevancy*.  In an action for the destruction of growing crops by the diversion therefrom of the water necessary for the irrigation thereof, evidence as to the condition of the crop, the probability of its ultimately coming to maturity, the probable yield, the cost of harvesting, the climatic condition of the season, the yield of like crops upon adjacent lands, is admissible upon the question of damages,—but only for the purpose of determining the value of the crops, as it was at the date of the injury. (171.)

In an action for injury to lands by seepage negligently allowed from an irrigating ditch, the reasonable cost of restoring the land to its former condition is relevant to its value after the injury. (174.)

4. IRRIGATION—*Liability of Ditch Owner for Seepage*.  The owner of a ditch is not liable for damages occasioned by seepage therefrom, unless attributable to negligence in the construction or operation of the ditch (Rev. Stat. secs. 993, 3233).  Teller, J., dissented. (172.)

The question is not affected by sec. 15 of Art. II of the constitution. (173.)

5. CONSTITUTIONAL LAW—*Taking Private Property*.  Sec. 15, of Art. II of the constitution is limited to proceedings under the statute of eminent domain.  It has not the effect to charge the owner of an irrigating ditch with the damages occasioned by seepage therefrom, to the lands of another— no negligence being shown. Scott, J., dissented. (173.)

6. PARTIES—*Non-Joinder Must Be Pleaded*.  Action for an injury to lands by seepage negligently permitted from an irrigating ditch.  If the defendant would avail himself of the non-joinder of one having a mortgage upon the lands, he must plead it. (174.)

7. JUDGMENT—*Protection of Absent Parties*.  Action for an injury to lands by seepage from defendant's ditch.  *Held* that the court might, by an order as to the disposition of the recovery, afford defendant adequate protection against the non-joinder of one having a mortgage upon the land. (174.)

*Error to Morgan District Court.*  HON. H. P. BURKE, Judge.
*On rehearing.*

Messrs. MUNSON & MUNSON, for plaintiff in error.

Messrs. ALLEN & WEBSTER, for defendant in error.

Messrs. SMITH, BROCK & FERGUSON, GOUDY, TWITCHELL & BURKHARDT, *Amici Curiae*.

GABBERT, C. J., delivered the opinion of the court.

Defendant in error, plaintiff below, brought an action against plaintiff in error as defendant, to recover damages. The complaint contained two causes of action. The first was for loss of crops for the years 1910 and 1911, and the second for injury to his land, as the result of seepage from a ditch constructed and operated by defendant. The jury returned a verdict in favor of plaintiff, assessing his damages on the first cause of action at $404.50, and on the second, in the sum of $6,000.00.

By the first count it was alleged in substance; that the plaintiff was the owner of an eighty acre tract; that defendant so constructed its ditch on adjacent lands above and higher than plaintiff's land as to obliterate and destroy the laterals by which his land was supplied with water for the purpose of irrigation, by reason of which plaintiff failed to receive sufficient water for the irrigation of his land during the years 1910 and 1911, whereby the crops thereon for these years were destroyed, to his damage in the sum of $1,500.00.

The court instructed the jury that if they found from the evidence that any damage was occasioned to the growing crops for which defendant was liable under the first cause of action, the measure of such damage would be the reasonable value of the crops at the time the damage occurred, and in the condition they then were. Counsel for defendant insist this instruction was erroneous, because the measure of damages was the rental value of the land. It appears that plaintiff was in possession of the land, and planted crops thereon which did not fully mature for lack of water. Had he been deprived of the entire use of the land, the rental value might have been the proper measure of damages, but such is not the fact in this case. *Northern Colorado Irrigation Co. v. Richards*, 22 Colo. 450, 45 Pac. 423.

By the same instruction the court further advised the jury in substance, that all evidence as to the probable maturing of the crops, the cost of harvesting, and the probable yield thereof; the climatic condition of the seasons, and the condition and yield of crops on adjacent lands for the same years, should only be considered in so far as they assisted in determining the value of the crops as above mentioned. Evidence of the character mentioned by the above instruction was introduced over the objection of defendant, and it is urged that the jury in assessing damage to the crops, instead of limiting it to the value of such crops when destroyed, were permitted to go into the realm of conjecture, by determining what their value would have been had the supply of water necessary to mature them not been intercepted by the defendant. In the circumstances of this case we think the objection is not tenable. In the course of the trial, when evidence of the above character was being introduced, the court ruled that it was competent for the purpose of establishing what the crops were worth at the time they were destroyed, but not to show what kind of crops would have matured. From this ruling in connection with the instruction as a whole, we think the jury understood that in assessing damages, the value of the crops at the time they were destroyed was the criterion by which to ascertain the damages in this respect. In brief, the two propositions urged by counsel for defendant on the subject of damage to the crops are, first, that the rental value of the land was the proper measure, and second, what the crops would have been worth if the supply of water had not been cut off was not. On these questions we hold that the rental value of the land was not the proper measure of damages, and that by the ruling and instruction the jury understood the value of the crops at the time they were destroyed constituted the damages to be assessed. Further than this we do not express any opinion.

In the second cause of action it was not alleged that negligence of the defendant in constructing, maintaining,

or operating its ditch caused seepage to the land of plaintiff. A general demurrer was interposed by defendant, and overruled, and the court instructed the jury that it was not necessary for plaintiff to allege or prove negligence on the part of defendant, either in the construction or operation of its ditch. The defendant had the right to construct the 'ditch on the land occupied for that purpose. By statute it is provided that the owner of a ditch for irrigation purposes shall keep it in good condition, and carefully maintain its embankments, so that water therefrom shall not damage the premises of others. Sections 993, and 3233, R. S. 1908. These statutory provisions do not make the owner of a ditch absolutely liable for damages, but liable only for negligence. In other words, the owner of a ditch is not liable for damages as the result of water seeping therefrom, unless it appears that such seepage was caused by the negligent construction or operation of the ditch. *City of Boulder v. Fowler,* 11 Colo. 396, 18 Pac. 337; *Grand Valley Irr. Co. v. Pitzer,* 14 Colo. App. 123, 59 Pac. 420; *Middelkamp v. Bessemer Irr. Co.,* 46 Colo. 102, 103 Pac. 280, 23 L. R. A. (N. S.) 795; *Greeley Irr. Co. v. House,* 14 Colo. 549, 24 Pac. 329; *Garnet Co. v. Sampson,* 48 Colo. 285, 110 Pac. 79, 1136; *Platte & Denver D. Co. v. Anderson,* 8 Colo. 131, 6 Pac. 515; *Denver City I. & W. Co. v. Middaugh,* 12 Colo. 434, 21 Pac. 565, 13 Am. St. Rep. 234. The same rule has been announced in other jurisdictions. *Fleming v. Lockwood,* 36 Mont. 384, 92 Pac. 962, 14 L. R. A. (N. S.) 628, 122 Am. St. Rep. 375, 13 Ann. Cas. 263; *Howell v. Big Horn Basin C. Co.,* 14 Wyo. 14, 81 Pac. 785, 1 L. R. A. (N. S.) 596. The construction and operation of the ditch by defendant was a lawful enterprise, expressly authorized by the statutes of this state. It had the right to construct it upon the land it occupied, and as its liability for seepage therefrom is fixed by statutory provisions, which from the authorities cited, do not make it responsible for damages as the result of such seepage, except for negligent construction or operation of the ditch, the demurrer to the second

cause of action should have been sustained, and it was error to instruct the jury that it was not necessary to prove negligence on the part of defendant.

Counsel for plaintiff insist that by virtue of section 15, article 2, of the Constitution, which provides: "That private property shall not be taken or damaged for public or private use without just compensation," he is entitled to recover without alleging or proving negligence in the construction or maintenance of the ditch. That provision refers, and is limited to proceedings in eminent domain, or to cases where injury results by reason of the taking of property in which the abutting owner has an interest. Its purpose was to require compensation to be paid the owner of land taken in such cases, not only for the land actually taken, but for damages to the residue. *City of Denver v. Bayer*, 7 Colo. 113, 2 Pac. 6. In eminent domain proceedings all damages, present and prospective, that are the natural incident of the improvement for which the land is taken are to be assessed, which in case of lands taken for the construction of a ditch includes damages to the residue likely to occur by seepage from such ditch. *Denver City I. & R. Co. v. Middaugh, supra; Farmers R. & I. Co. v. Cooper*, 54 Colo. 402, 130 Pac. 1004. The action at bar is not one in eminent domain, consequently the rule announced for damages for seepage in such a proceeding does not apply. Should the constitutional provision under consideration be given a literal and wholly unqualified construction, it would result in requiring one to so use his property as not to inflict any injury or inconvenience on another, and that if he did not he must respond in damages to that other. *Denver Circle & R. Co. v. Nestor*, 10 Colo. 403, 15 Pac. 714.

It is next urged that the court erred in instructing the jury on the measure of damages for seepage, it being contended that the true measure is the cost of restoring the land to its natural condition, by a proper system of drainage, if it can be so restored. This is contrary to the decision

of this court in *Mustang Reservoir, C. & L. Co. v. Hissman,* 49 Colo. 308, 112 Pac. 800, in which it was held that the measure of damage for injury to land, on account of being covered with debris, is the difference between the value of the land immediately before and immediately after it was so injured, but that the reasonable cost of restoring it to its original condition was proper to consider in ascertaining its value after the injury occurred.

It is also claimed that the damages awarded by the jury, under the second cause of action, are excessive.    As the judgment must be reversed, and the cause remanded for a new trial, it is unnecessary to consider this question.

In our opinion the claim that plaintiff did not prove a title which entitled him to recover damages for permanent injury to the land is without merit.

During the trial it developed that the land was mortgaged.  Defendant moved for a directed verdict, based upon the ground that the mortgagee had an interest in the premises.   This motion was overruled.   The defendant by answer should have set up the existence of the mortgage, and asked to have the mortgagee made a party before it is in a position to raise the question that he was a necessary party.   Without deciding the question, because not raised, the court might have made an order touching the disposition of the sum recovered, which would have afforded the defendant adequate protection had it so requested.   *Elvins v. Delaware & A. Tel. & Tel. Co.,* 63 N. J. L. 243, 43 Atl. 903, 76 Am. St. 217.

The original opinion is withdrawn, the judgment thereon vacated, and the judgment of the District Court on the first cause of action is affirmed, and as to the second, reversed, and the cause remanded for further proceedings under the second cause of action, in harmony with the views expressed in this opinion.   Plaintiff should be permitted to amend his second cause of action if so advised.

*Judgment Reversed in part and Affirmed in part.*

**Decision** *en banc.*

Mr. JUSTICE SCOTT and Mr. JUSTICE TELLER dissent.

SCOTT, J., dissenting.

Section 15, article II of the Constitution provides: "That private property shall not be taken or damaged for public or private use without just compensation."

The statement in the majority opinion, that "This provision refers, and is limited to proceedings in eminent domain, or to cases where injury results by reason of the taking of property in which the abutting owner has an interest," I regard as the vital and fundamental error in the opinion.

This announcement plainly places an arbitrary limitation upon one of the provisions of the Bill of Rights  It finds no support in sound reason or justice.

It is true that the question has arisen in the suggested class of cases generally, but the provision of the Constitution is general in its terms, and if the charter of our liberties is to be preserved, it must be held to be universal in its application.

In this case the natural result of the construction of the ditch, upon adjacent and higher lands, and the flow of water through it, was to so damage the plaintiff's lands as to result in their complete destruction, and to likewise destroy the use of his domicile.

It is fundamental in the law that wherever there is a right there is a remedy.  This maxim is especially applicable where there is a constitutional guaranty of that right.

If the ditch company had constructed the ditch across plaintiff's lands, then the latter could recover in full for the damage, is the view of the majority of the court.  But because the ditch company elected to construct its ditch just above his lands, an action and proceeding in which plaintiff could have no voice, then the ditch company, and as a natural

and direct result of such location, may destroy the plaintiff's lands with impunity. This conclusion is, to my mind, absurd and unreasonable, and in plain violation of the constitutional guaranty.

It is also in violation of section 3 of our Bill of Rights, which provides: "That all persons have certain natural, essential and inalienable rights, among which may be reckoned the right of enjoying and defending their lives and liberties; that of acquiring, possessing and protecting property; and of seeking and obtaining their safety and happiness."

It is likewise in violation of section 6 of the Bill of Rights; providing that, "The courts of justice shall be open, and a speedy remedy afforded for every injury to person, property or character," in that the opinion closes the doors of justice to the plaintiff, and denies him any remedy for a palpable injury to his property, the unquestioned result of the plaintiff's acts, purposely done for its specific benefit, and for the public benefit.

It will not do to say the defendant is relieved because the taking of the lands of the adjoining proprietor was in a lawful way. It can make no difference how one acquires property, or the use of it, whether by purchase or condemnation, he cannot thereby or thereafter lawfully damage or destroy the property of his neighbor, by his own wilful act, lawful or unlawful in itself, without compensation.

This protection is the very spirit of the law of eminent domain, and to say that the citizen has no protection when the law of eminent domain cannot apply, is preposterous.

To my mind the principle announced is in clear violation of the 14th amendment of the Constitution of the United States, and of the provisions of our state constitution, in that it denies to the plaintiff due process of law, and likewise the equal protection of the law.

The fundamental principle of our government is the inalienable right of all men to life, liberty and the pursuit of

happiness. It will not be disputed that this includes the right to hold and enjoy property, without molestation, except by due process of law, followed by just compensation.

This court may with equal propriety place a limitation and restriction upon every other declaration of the Bill of Rights. It may place restriction upon the right to the writ of habeas corpus; it may place a limitation upon the guaranty of freedom from imprisonment for debt; it may curtail the guaranty of liberty of speech, for the equal protection of the law, goes to the rights of property as well as to the liberty of the person.

The principle announced in the majority opinion, is repugnant to my every sense of justice, and in my opinion, is in conflict with the very letter and spirit of our laws, and, as Mr. Justice Teller has so clearly pointed out, there is in this case a plain remedy under the common law, if not by the statutes.

Mr. JUSTICE TELLER dissents.

I concur in the conclusions of the majority opinion as to the questions arising on the first cause of action, but can not agree that the plaintiff is required to allege and prove negligence in order to recover for injuries to his land by seepage from defendant's ditch.

This decision is so important to the property holders of this state, other than ditch owners, placing as it does in my opinion, an unjust burden upon them, that I deem it proper to state the reasons for my dissent.

Those reasons are:

First, that the statutes of this state, properly interpreted, make the ditch-owner responsible in such a case, regardless of the question of negligence.

Second, that there is a right of recovery under the principles of the common law as announced in adjudged cases.

Section 993 R. S. 1908, requires ditch companies "to keep their ditch in good condition so that the water shall not

be allowed to escape from the same to the injury of any mining claim, road, ditch or other property; and whenever it is necessary to convey any ditch over, across or above any lode or mining claim, or to keep the water so conveyed therefrom, the company shall, if necessary to keep the water of said ditch out, or from any claim, flume the ditch so far as necessary to protect such claim or property from the water of said ditch."

This statute imposes upon ditch companies the duty of keeping their ditches in "good condition," and what is meant by "good condition" is specified by the following clause "so that the water shall not be allowed to escape, etc.," to the injury of the property of others. If water does escape to the injury of property that fact itself is evidence that the ditch is not in the good condition which the law requires. This duty to prevent injury to adjacent property is emphasized by the rest of the section which requires the companies to use flumes where necessary to protect property from injury by escaping water.

Does not this specific requirement clearly show the general purpose of the section?

Section 3233, Id., is to the same effect. It provides that the owners of ditches "shall carefully maintain the embankments thereof, so that the waters of such ditch may not flood or damage the premises of others." Here, again, the care required is defined by the clause beginning "so that," and if water escapes and damages the premises of others, the embankments have not been maintained as the law specifies they shall be.

In *King v. Miles City Irr. Co.*, 16 Mont. 463, 41 Pac. 431, 50 Am. St. 506, the court held that an instruction that the ditch company should construct its "ditches in such a reasonable and prudent manner as that no damage shall result," etc., made the defendant absolutely an insurer against all damage. The instruction was no stronger than the language of this section, using "as that" instead of "so that," and if

the court was right in its conclusions, this statute imposes an absolute liability on the ditch owners.

This general policy of the law is further evidenced by other portions of the statutes.

Section 3238 is as follows: "The owner of any irrigation or mill ditch shall carefully maintain and keep the embankments thereof in good repair, and prevent the water from wasting."

Section 3244 requires ditch-owners to erect and keep in good repair head-gates and embankments "of sufficient height and strength to control the water at all ordinary stages."

Section 3245 makes ditch owners "liable for all damages resulting from their neglect or refusal to comply with the provisions" of the section last mentioned.

Section 3260 makes it the duty of every person receiving water from any ditch or reservoir to see that he receives no more, "by any ways or means whatsoever, than he is entitled to, and he shall, at all times, take precaution to prevent more water than he is entitled to, coming from such ditch, canal or reservoir, upon his land."

The next section requires the consumer, on finding that he is receiving more than his right, "either through his head-gate, or by means of leaks, or by any means whatsoever, immediately to take steps to prevent his further receiving more water from such ditch, canal or reservoir, than he is entitled to; and if he knowingly permits such extra water to come upon his land,  *  *  *  and does not immediately notify the owner or owners of such ditch, or take steps to prevent its further flowing upon his land, he shall be liable to any person or corporation who may be injured by such extra appropriation of water for the actual damage sustained by the party aggrieved."

The consumer is thus required to take steps and be active to prevent the escape of water, from whatever cause, and whether its escape is due to negligence or not; but, ac-

cording to the majority opinion, the ditch owner need do nothing to prevent the waste of water and the injury of adjoining property, if he has used ordinary care in constructing the ditch.

Such an interpretation of the statute is a travesty of justice, requiring a person in no way responsible for conditions to be active in remedying them, while he who is responsible for them is by law permitted to remain inactive and indifferent to the injuries resulting from the consequences of his acts. The law can not intend such a result.

Again, the ditch owner is required to keep the ditch so as to prevent waste of water, (3238), and to maintain headgates and embankments so as to control the water at all ordinary stages, (3244), and is liable for all damages resulting from failure so to do (3245), yet according to the majority opinion he is not liable for such damages unless he has been guilty of negligence. But the requirement of the statute is positive that he *shall* keep the head-gates and embankments of such size and strength as to control the water at all ordinary stages, and he is made liable for *"neglect* or *failure"* so to do.

"Neglect" is defined by Webster as "negligently to omit" to perform a task or duty; and further it is said that, "negligence and neglect are sometimes used with little distinction."

If, then, the statute means to provide against negligence merely, why is the ditch owner made liable also for a "refusal" to keep the ditch safe?

Neglect is failure, through carelessness or inadvertences, to perform a duty; "refusal" is the act of consciously declining to comply with a demand or invitation. The law, here demands that a thing be done, and whenever a party, whose duty it is to do that thing, fails to do it, he has, in law, refused to do it.

Unless we are to abandon the elementary rules of statutory construction we must assume that the words "neglect"

and "refusal" were used with a purpose, and the intent thus expressed must be given effect in applying the law.

In *Garnet Co. v. Sampson,* 48 Colo. 285, 110 Pac. 79, 1136, Justice Campbell, in his dissenting opinion, points out that the liability imposed by the sections of the law regarding the duties of ditch companies is as extensive as that to which reservoir owners are made subject. This is clearly so, and this court, having given to section 3204, a construction in accord with the plain import of its terms, should do no less as to these sections.

The public, the owner of the waters of the natural streams of this state, has an interest in preventing the waste of water, and these statutes were intended, in my judgment, to do, what they in terms declare shall be done, to-wit: prevent waste of water, as well as injury to property.

My second proposition is that there is a common law liability in these cases, regardless of negligence.

In *Sylvester v. Jerome,* 19 Colo. 128, this court said that the section which makes reservoir owners absolutely liable, was simply an affirmation of a common-law principle, which is, according to the opinion in *Garnet Co. v. Sampson, supra,* announced in the well-known case of *Rylands v. Fletcher,* L. R. 3 H. L. 330, as follows:

"We think that the true rule of law is that the person who, for his own purposes, brings on to his own land and collects and keeps there anything likely to do mischief if it escapes, must keep it at his own peril, and if he does not do so, is *prima facie* answerable for all the damage which is the natural consequence of its escape. He can excuse himself by showing that the escape was owing to the plaintiff's default; or perhaps that the escape was the consequence of *vis major,* or the act of God." It may be remarked that under a later decision, *vis major* or the act of God, is recognized as a defense within the principle announced. *Nichols v. Marsland* L. R. 10 Exch. 255.

That this court was justified in considering the com-

mon-law principle in force here regardless of the statute, is shown by the case of *G. B. & L. Ry. Co. v. Eagles,* 9 Colo. 544, 13 Pac. 696, where it is said: "In general, if a voluntary act, lawful in itself, may naturally result in injury to another, or the violation of his legal rights, the actor must, at his peril, see to it that such injury or such violation does not follow, or he must expect to respond in damages therefor; and this is true regardless of the motive, or the degree of care with which the act is performed." citing *Rylands v. Fletcher,* and other cases to the same effect.

In *Garnet Co. v. Sampson, supra,* this court after referring to *Sylvester v. Jerome* as holding the statute a mere affirmation of the common-law rule, makes the foregoing quotation from the *Rylands* case; but announces that its ruling then made is based wholly on the statute. Since the two cases above cited accept the rule laid down in the *Rylands* case as the law, the majority opinion must be understood to overrule them.

In the *Garnet* case this court further said that the underlying principles imposing absolute liability upon railroads for damages by fire applied with equal force to the statute then under consideration, and quoted at length from two Missouri cases and one United States Supreme Court case, in which this underlying principle is set forth. That principle is fundamentally identical with that announced in the *Rylands* case, and the cases which have followed it. In one of the Missouri cases thus cited, (*Campbell v. M. P. Ry. Co.,* 121 Mo. 340, 25 S. W. 396, 25 L. R. A. 175, 42 Am. St. 530), speaking of a railroad company and a property owner on its line, the court said: "Both parties are faultless, but nevertheless, the property of the owner is consumed by fire from an engine. The property owner has the right to own the property, and to claim protection under the law, equal at least to the right of the corporation to use fire on its engines. The loss must necessarily fall upon one or the other of these parties. Which one of them shall suffer the loss,

the one through whose agency the damage was caused, though in the lawful use of its property, or the one equally innocent of wrong, and who had no agency in causing the damage? Tested by the rule of natural right and equity there could be but one answer to the inquiry. This answer is formulated into the maxim that "everyone should so use his own property as not to injure that of his neighbor." Apply this language to the case at bar. Here we find the ditch company claiming exemption from liability, because it is pursuing a lawful business under the authority of the state, and, in case water escapes in spite of due care to prevent it, the property owner, who is also entitled to protection, and has done nothing in the premises, must suffer the loss. Can anyone deny the correctness of the Missouri court's conclusion that the one who is responsible for the presence of the dangerous agency should answer for the loss? This court is, thus again, committed to the doctrine embodied in the *Rylands* case.

It is true that in *Bishop v. Brown,* 14 Colo. App. 535, 61 Pac. 50, Justice Bissell declared his belief that the *Rylands* case was not in accord with the general American doctrine. But the case before him was for damages from the explosion of a boiler, and the action was based on negligence; clearly a case where the principle now under discussion did not apply, even if the action had not been predicated on negligence. As is pointed out in *Berger v. Minneapolis Gas Co.,* 60 Minn. 296, 62 N. W. 336, the doctrine of the *Rylands* case is confined to things brought upon the premises, which, if permitted, will escape, and be likely to commit mischief.

That the American doctrine makes negligence the basis of an action, is asserted in Thompson's Com. on Neg. section 696, but the author cites only one case to support this broad assertion, viz.: *Defiance Water Co. v. Olinger,* 54 Ohio St. 532, 44 N. E. 238, 32 L. R. A. 736. In that case the court quotes at length from the *Rylands* case, and says of it: "This

doctrine would seem to be in exact accord with justice and sound reason, but in the case before us we are not required to apply it to its full extent, because the defendant in error, in her amended petition, expressly averred negligence in the construction of the stand-pipe.   *   *   *   Therefore, whether or not she could recover in the absence of negligence on the part of the water company. in storing the water, does not concern us at this time." Thus it is clear that the case does not announce a doctrine different from the English rule, but on the contrary, approves it as in accord with justice and reason.   On the other hand, there are numerous American cases in which the English rule has been followed, either by applying the principle of the *Rylands* case, or by direct approval of it.   See *Cooper v. Randall,* 53 Ill. 24; *Kankakee Water Co. v. Reeves,* 45 Ill. App. 285; *Boynton v. Longley,* 19 Nev. 69, 6 Pac. 437, 3 Am. St. Rep. 781; *T. & P. Ry. Co. v. O'Mahoney,* 24 Tex. Civ. App. 631, 60 S. W. 902; *City of Eufaula v. Simmons,* 86 Ala. 515, 6 South. 47; *Sanderson v. Pa. Coal Co.,* 86 Pac. 401, 27 Am. Rep. 711; *N. P. Irr. Co. v. Canal Co.,* 16 Utah 246, 52 Pac. 168, 40 L. R. A. 851, 67 Am. St. Rep. 607; *McCormick v. K.C.St.J.&C.B.Ry.Co.,* 70 Mo. 360, 35 Am. Rep. 431; *Odell v. Nyack Water Co.,* 91 Hun 283, 36 N. Y. Supp. 206; *Cahill v. Eastman,* 18 Minn. 324 (Gil. 292) 10 Am. Rep. 184; *Berger v. Minneapolis Gas Co.,* 60 Minn. 296, 62 N. W. 336; *Tillotson v. Smith,* 32 N. H. 90, 64 Am. Dec. 355; *Pixley v. Clark,* 35 N. Y. 520, 91 Am. Dec. 72; *Reed v. State,* 108 N. Y. 407, 15 N. E. 735; *Wilson v. New Bedford,* 108 Mass. 261, 11 Am. Rep. 352; *Jutte v. Hughes,* 67 N. Y. 267.

Even in California where, as we shall see, occurred the first departure from sound principle in this matter, the rule for which we now contend has been approved.   In *Parker v. Lassen,* 86 Cal. 236, 24 Pac. 980, 21 Am. St. 330, in affirming a judgment for damages from seepage, no question of negligence being raised, the court said: "The rule is general that where one brings a foreign substance on his land, he

must take care of it, and not permit it to injure his neighbor. The law upon the subject is tersely expressed in the maxim, *"Sic utere,* etc."

The majority opinion, to support the holding that negligence is necessary to be alleged and proved, cites a number of cases from the reports of this state, none of which, in fact, determined that question. *City of Boulder v. Fowler,* 11 Colo. 396, 18 Pac. 337, is an action, as the court in that case says, "based upon the negligence of the city in the premises." The only question considered was the sufficiency of the evidence to support the verdict.

*Grand Valley v. Pitzer,* 14 Colo. App. 123, 59 Pac. 420, was founded upon negligence, as the opinion states at page 124, it being alleged that the ditch was constructed without sufficient waste-ways. The court found that the damages were due to an extraordinary storm, not to have been anticipated; a defense good under the English rule.

*Middelkamp v. Bessemer Irr. Co.,* 46 Colo. 102, 103 Pac. 280, 23 L. R. A. (N. S.) 795, did not present this question. The ditch company in that case set up the statute of limitations as a special defense. To this the plaintiff demurred; the demurrer was overruled, and the case came to this court upon the correctness of that ruling. Whatever remarks were made by the court in regard to this question were *obiter.* The case was decided wholly upon the question of the availability of the statute of limitations as a defense.

*Greeley Irr. Co. v. House,* 14 Colo. 549, 24 Pac. 329, was, as the opinion states, founded on negligence. The answer set up "unavoidable accident," and this question could not have been considered in the case.

*Garnet Co. v. Sampson, supra,* as has already been pointed out, does not present this question at all.

*Platte & Denver D. Co. v. Anderson,* 8 Colo. 131, 6 Pac. 515, was an action to have a ditch in a street abated as a public nuisance. There was no allegation of seepage nor

of any injury, except from the presence of the ditch in the street.   The court held that the owners of such ditch are not liable to damages resulting from the mere existence of the ditch in the street.

*Denver City Irr. Co. v. Middaugh,* 12 Colo. 434, 21 Pac. 565, 13 Am. St. 234, was one in which the plaintiff averred that the construction of the defendant's canal and reservoir was so negligently done that water percolated through the banks and ran upon his land to his damage.   The court held that the plaintiff, having had damages assessed in condemnation proceedings for land taken for the ditch, had received compensation for all injuries likely to result from seepage and leakage, not resulting from negligence or unskillful construction of the ditch; that being a part of his right in such proceedings, seepage being naturally anticipated.

The last case suggests a reason why the rule laid down in the majority opinion ought not to prevail.   According to that case, A., through whose land a ditch runs, may have included in his damages the results of such leakage and seepage as may naturally be anticipated, without regard to negligence in the construction of the ditch, such damages being properly assessed in the condemnation proceedings. But, B., whose land is not touched by the ditch, if it is injured or destroyed by seepage, has no remedy unless he can establish the fact of negligence in the construction or operation of the ditch.   This is certainly a discrimination without any basis in justice or reason.

The majority opinion cites also *Howell v. Big Horn Basin Co.,* 14 Wyo. 14, 81 Pac. 785, 1 L. R. A. (N. S.) 596. This case was also founded on negligence and the court held that the building of a ditch in land clearly likely to seep was itself negligence.

*Fleming v. Lockwood,* 36 Mont. 384, 92 Pac. 962, 14 L. R. A. (N. S.) 628, 122 Am. St. 375, 13 Ann. Cas. 263, is the only case cited which supports the contention, and, as we

shall see, it is based upon a line of cases in which the principle is not discussed and which follow some early cases which are not, in principle, applicable to this question.

The majority opinion wholly overlooks the case of *C. C. & C. C. Ry. Co. v. Oxtoby*, 45 Colo. 214, 100 Pac. 1127, in which the defendant was held liable for seepage from a borrow-pit, without regard to the care exercised to prevent it. If a person is required to prevent the seepage of water from a pit on his premises, regardless of negligence, I am unable to see why, on principle, one who maintains water in a ditch, is not under the same legal obligation. In either case, the duty arises from the fact that he has brought upon, or allowed to accumulate, upon his premises, something which, in its nature, is liable to escape therefrom, and injure the adjoining property. This is the same principle under which land owners are liable for the escape of filth or noxious substances from their land. Cooley on Torts, pp. 567-568; Wood on Nuisances, sec. 116.

The opinion also fails to note the case of *Home Supply Ditch Co. v. Hamlin*, 6 Colo. App. 341, 40 Pac. 582, in which a judgment for damages from seepage is affirmed, though the court says there was no negligence shown, and that the question of negligence is not in the case. This decision is squarely in conflict with the ruling in the case at bar.

It will be found upon examination of the ditch cases which make negligence an element in a cause of action for seepage or overflow, that they begin with *Hoffman v. Tuolumne Co.*, 10 Cal. 413, in which there is no discussion of the principle involved, the court relying on two New York cases and a Vermont case. Those cases grew out of the breaking of dams on natural streams, and do not present this question at all. The basis of the *Rylands* rule is the distinction between the natural and the non-natural use of land, and it applies only in the latter case. From time immemorial streams have been the source of power, and the

placing of dams on them is a natural use of them.   Hence, it has been generally held that for the breaking of such a dam there is no liability in the absence of negligence.

The conveying of water across lands by artificial ditches is not a natural use of such lands, and the rule as to breaking dams has no application in these ditch cases.   The ditch cases mentioned are without foundation in principle and ought not to be followed.

Indeed, in Black's edition of Pomeroy on Water Rights, in sec. 79, it is stated that the California rule does not impose a sufficient liability upon the owners of water works.   The author suggests that they ought to be held to the "use of all reasonably *possible* means," to prevent accidental injuries. This is an approach, at least, to a correct view.   Judge Thompson, in sec. 711 of the work above mentioned, says: "Although the doctrine of *Rylands v. Fletcher*, * * * may not be the rule in the particular forum,—yet it will be a reasonable conclusion that the mere fact of the escape of water doing damage to the plaintiff is *prima facie* evidence of negligence, sufficient to charge the defendant with liability for damages, unless he exonerates himself by showing that it was the result of a *vis major*, or an inevitable accident."

This is, in effect, the English rule.

Upon what principle can it be maintained that one may take upon his land that which does not naturally belong there, and which is likely to escape, and do damage, and be held only to ordinary care to prevent such escape and injury?   This is to put the person who for his own profit has devoted his land to a non-natural use, and thereby caused injury to another, on the same footing as the injured person who has done nothing at all.   Bearing in mind that the rule for which we contend is limited in its application to those things which have a tendency to escape and cause injury, is it not reasonable that he who brings them upon his land should abide the consequences, *vis major* and inevitable accident alone excepted?

In the case at bar, to permit the defendant to injure plaintiff's land in order to convey water to its shareholders for their benefit is to impose upon plaintiff's land a servitude for which there is no warrant in law.

More than that, it is a taking of his land for a private purpose without compensation. Granted that the irrigation of land is highly important to the welfare of the State, by what process of reasoning is the conclusion reached that it is the lands of defendant's shareholders which are to be made productive, while plaintiff's lands are rendered unproductive and valueless? Both parties are equal before the law and entitled alike to its benefits.

The question has already been determined in this state, and we should follow our own decisions and not those which began in error, and have continued without foundation in reason or justice.

The judgment should be affirmed.

Decided Nov. 2, A. D. 1914. Rehearing allowed. Judgment affirmed in part and reversed in part April 5, A. D. 1915.