Hurlbut, J.,
rendered the opinion of the court.
This action was begun August 2, 1909, by plaintiff Elling, defendant in error, against defendant, iThe Beaver Creek School Land Ditch Company. We will speak of the parties herein as plaintiff and defendant, as they appear in the original complaint.
*253 The action is principally to recover damages for injury done to plaintiff’s brick yard, garden and cellar, by reason of seepage from defendant’s ditch. It is claimed in the complaint that, by reason of the negligence and carelessness of defendant in maintaining its ditch, the waters therefrom were permitted to seep into plaintiff’s cellar, and into the pit from which he was extracting clay for brick making purposes; that by reason thereof he was compelled to cease work for a time, and was put to the cost and expense of removing the seepage water from the cellar and working pit. It is further averred that defendant had constructed its ditch and the banks thereof in a careless and negligent manner, and in such a way as to be unsuited and insufficient for the uses and purposes for which it was constructed, and had failed and neglected to keep and maintain the ditch and its banks in proper repair for such purposes; that on or about July 1, 1909, while the ditch was in a defective condition, defendant premitted The Great Western Sugar Company, one of its water consumers, to place an obstruction called a “ditch check” in the ditch, some distance below plaintiff’s land, which prevented and hindered the natural flow of the water in the ditch, causing a back-flow therein, until it reached a point opposite plaintiff’s premises, thereby causing the seepage aforesaid.
Defendant’s answer formed issues upon the allegations of the complaint. ,
From reading the briefs we infer that the decisive issues presented for our consideration are those relating to the validity of certain instructions given, and the sufficiency of the evidence to support the verdict.
Objection is made by defendant that instruction number five is erroneous, for the reason that it fails to state that a ditch owner is only held to ordinary care in the operation, construction or management of the ditch, and is not liable unles he fails to exercise such care. The instruction reads as follows:
*254 “Under the law of this case it was a duty incumbent upon the defendant company to keep its ditch in good condition, maintain'its embankments, keep them in good repair, and prevent water wasting therefrom.”
Objection is also made to instruction number six, which instructs the jury in substance that if defendant’s ditch was carelessly or negligently constructed, managed or operated, so as to cause seepage and damage to plaintiff’s property, defendant would be liable, etc. These two instructions are evidently founded upon sections 3233 and 3238, Revised Statutes, Colorado, 1908, the former reading in part as follows:
“The owner or owners of any ditch for irrigation, or other purposes, shall carefully maintain the embankments thereof, so that the waters of such ditch may not flood or damage the premises of others.”
The latter reads as follows:
“The owner of any irrigating or mill ditch shall carefully maintain and keep the embankments thereof in good repair and prevent the water from wasting.”
An instruction is generally good if it fairly follows in phraseology the language of a statute that imposes a duty, for failure to perform which, liability attaches in case damage results.
The court elsewhere in the instructions told the jury that the burden of proof was upon plaintiff to establish the negligence and carelessness charged against defendant, by a preponderance of the evidence, failing in which their verdict should be for defendant; also that plaintiff could not recover for any damage done him by the operation of defendant’s ditch unless such damage was due to the carelessness or negligence of defendant in its operation or construction, and such carelessness or negligence was unknown to plaintiff at the time he purchased his property, and he could not have known the same by the exercise of reasonable care and diligence; and that they could not render a verdict /in. *255 favor of plaintiff unless the damage complained of- was directly caused by the carelessness or negligence of defendant in the- construction,- operation or management, of its ditch. If all the instructions upon this point be considered together, we think the, court was warranted in giving the two to which objection is made. Objections to instructions, similar to those here urged,' were made in Greeley Irrigating Co. v. House, 14 Colo. 549, and the court held such objections untenable.
Further objection is made by defendant to the giving of instruction number seven, upon the ground that the same is not clear, and is based -upon the premise that water seeped from its ditch. By this instruction the jury was told in substance that before plaintiff could recover he must’ not only prove the character and aniount of his damage, but also that the water which caused the same came in fact from the ditch of defendant, and that tie damage was the proximate result of the operation bf defendant’s ditch. We see no serious objection in this instruction, if we bear in mind other instructions given. The instructions are based upon ample evidence, which tends to show that the damage claimed by plaintiff was the result of seepage from defendant’s ditch; that such seepage -could have been caused in no other way;, that the seepage was caused by- placing the “ditch check” in the ditch, which backed the water up to and opposite plaintiff’s property; and further, that defendant permitted the main ditch to carry an excessive amount of water, which raised it up so as to. flow on new-made embankments, which, it is .claimed,- were so negligently constructed as to permit of seepage through the same, causing the-damage complained of. '
Plaintiff’s witness Baker, a civil engineer, testified substantially as follows: ■ . - - •
“I think that water would not seep from the lateral .on the south of the-land into the "working pit. A very, small portion of: the water would seep from the small- lateral on *256 the opposite side of the Beaver Creek ditch as compared to the amount that would seep from the Beaver Creek ditch.”
Plaintiff Elling testified substantially as follows:
“In July, 1909, there was more water in the Beaver Creek ditch than there had ever been before.’ They had put a check in the ditch down further north to check the water up. -The water stood still and raised until it raised the flume at the southern part of my place. On the tenth day of the same month I had talked with the secretary of the defendant and he had gone down there and looked the place over. I notified the defendant company on July 13, 1909, by written notice. Defendant has never made any attempt to remedy the damage, and they did not make any attempt to prevent it after they had been notified. The little bench that I mentioned in the ditch is the natural surface of the ground, and above that is the dirt piled up there for the ditch bank, and as soon as the water gets up over that ■ bench it comes through. After the water got up over the second bench in the ditch it went down into the ground and came out in the pit five feet below the surface.”
Bollinger, plaintiff’s witness, testified in substance as follows:
“I was on plaintiff’s property July 13, 1909. I saw the water running through, and judged that it was seepage. The water seemed to be coming out of the bottom of the pit.. It seemed to be moist up two or three feet. The Beaver Creek ditch was pretty full, caused by the check in the ditch. It was running over its banks on some prairie between the check and the south line of Elling’s property. When I was there Mr. Elling was not working on account of -the seepage. The laterals that drew the water out of the main ditch were very weedy.”
Plaintiff’s witness Nelson testified substantially as folows:
“I was at plaintiff’s property on July 13th, and observed that part of his property was being seeped or flooded *257 with water, the part that he used as a pit. It was so wet in there that he could not make brick. The water in the Beaver Creek ditch was checked up until it came up over the natural bank and into the made bank.”
Other evidence of like import is found in the record.
The argument in the brief of plaintiff in error is largely predicated upon the theory that there was not sufficient evidence to establish the allegations of plaintiff’s complaint concerning the seepage of water from defendant’s ditch into plaintiff’s premises, o.r to establish carelessness or negligence of defendant in the operation, maintenance or construction of its ditch. These issues of fact were submitted to the jury for their determination, and the instructions as a whole were noticeably fair to defendant. Many witnesses were sworn at the trial (none thereof being impeached), and the jury had the advantage of observing their manner and deportment in giving their testimony, as well as evidence of partiality (if any existed), for or against either of the parties. They also made a personal inspection of the premises alleged to have been damaged, and, after deliberation, returned a verdict of $157.00 in favor of plaintiff. In addition to this, the trial court, after listening to counsel upon the motion for new trial, and after considering the affidavits offered in support thereof, apparently discovered no ground for setting aside the verdict. Failing to find any reversible error in the proceedings below, we conclude the judgment should be affirmed.

Affirmed.